**Ex parte Stamatios PSAROUDIS.**

**No. 48312.**

Court of Criminal Appeals of Texas.

April 24, 1974.

Dick DeGuerin, Houston, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from an order denying relief after a hearing in a habeas corpus proceeding seeking discharge and reduction of bail after indictment but before trial.

On November 5, 1973, the grand jury in Harris County returned two indictments against the appellant alleging that the appellant delivered hashish to one Jerry D. Powell and that the appellant possessed hashish. The offenses were alleged to have occurred on November 1, 1973.

Bail was set at $50,000 for each offense.

Initially, appellant contends that there is no valid law in Texas prohibiting the possession or delivery of hashish. He argues that Section 4.02 of the Texas Controlled Substances Act, Vernon's Texas Session Law, Chapter 429, page 1148, effective August 27, 1973, Vernon's Ann.Civ.St., excludes hashish.

If there is no valid statute under which he can be charged, he is entitled to be discharged. See Ex parte Sanford, 163 Tex.Cr.R. 160, 289 S.W.2d 776.

Floyd McDonald, a chemist and toxicologist, called by the appellant, testified that hashish is a resinous extract of marihuana plants and that hashish is contained within the definition of "prohibitive substances" in Subparagraph (c), Penalty Group 2 of Section 4.02 of the Texas Controlled Substances Act. He further testified that hashish contains tetrahydrocannabinol.

Section 2.03(d)(17) of the Act provides that "tetrahydrocannabinols and synthetic equivalents . . . contained in the plant, or in the resinous extractives of cannabis . . ." are controlled substances.

A controlled substance defined in Section 1.02(5) is "a drug, substance, or immediate precursor" listed in Schedules I through V and Penalty Groups 1 through 4 of this Act. It is also provided in Section 2.01 that the substances listed in Schedules I–V and Penalty Groups 1–4 shall be controlled substances. The appellant recognizes this but contends that the penalty section of the Act excludes hashish, and therefore one cannot be punished for its possession. He cites Section 4.02(c), Subsection N:

"Tetrahydrocannabinols *other than marihuana* and synthetic equivalents of the substances contained in the plant, or in the resinous extractives of cannabis, or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity such as the following:

"delta-1 cis or trans tetrahydrocannabinol, and their optical isomers;

"delta-6 cis or trans tetrahydrocannabinol, and their optical isomers;

"delta-3, 4 cis or trans tetrahydrocannabinol, and its optical isomers." (Emphasis Supplied)

He contends that the phrase "other than marihuana" excludes hashish from the penalty provisions of the statute.

This phrase creates some confusion as to what is excepted from the tetrahydrocannabinols which have been prohibited. This confusion can be resolved by referring to Schedule I, Section 2.03(d)(17):

"Tetrahydrocannabinols and synthetic equivalents of the substances contained in the plant, or in the resinous extractives of cannabis, or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity such as the following:

"delta-1 cis or trans tetrahydrocannabinol, and their optical isomers;

"delta-6 cis or trans tetrahydrocannabinol, and their optical isomers;

"delta-3, 4 cis or trans tetrahydrocannabinol, and its optical isomers."

An examination of these two paragraphs reveals that the only change between the penalty group and the schedule is the addition of the words "other than marihuana" after the first reference to tetrahydrocannabinol in the penalty group. It is therefore obvious that grammatically these three words should be set off by commas in order to make the penalty group listing understandable and consistent with the same listing in Schedule I. The intent of the Legislature was to exclude marihuana from this section but did not mean to exclude any other substances contained in marihuana or the resinous extractives of cannabis or similar synthetic substances. This result is strengthened by the definition of marihuana which is contained in Section 1.02(17), wherein it is stated that the definition of marihuana "does not include the resin extracted from any part of such plant or any compound, manufacture, salt, derivative, mixture, or preparation of the resin." This interpretation is further strengthened by the provision in Section

4.03 and Section 4.04 covering the unlawful manufacture or delivery and unlawful possession of controlled substances and Section 4.05 which separately treats the establishment of penalties for possession and delivery of marihuana.

The chemist, McDonald, was of the opinion that hashish was included within the penalty group in question. However, he was of the opinion that natural tetrahydrocannabinols were within the group and it only excluded marihuana and synthetic tetrahydrocannabinols. This interpretation would be directly in conflict with the listing of tetrahydrocannabinol, both natural and synthetic, as prohibited substance in Schedule I, Section 2.03(d)(17). The Legislature did not intend to penalize the possession or transfer of tetrahydrocannabinols in their natural state and yet not prohibit the possession or transfer of synthetic substances with exactly the same or similar chemical structure and pharmacological acitivity.

An examination of the legislative history of the control of the substance in question further illustrates the incorrectness of the interpretation urged by the applicant in this case. It should be remembered that under the statute which preceded this enactment (Article 725b, Vernon's Ann.P.C.) cannabis was included within the definition of narcotic drugs and the term "cannabis" specifically included the resin extracted from any part of such plant, and furthermore more specifically included hashish (Article 725b, Section 1(13), V.A.P.C.). The movement within the Legislature which resulted in the enactment of the provisions for a lesser penalty for the possession of smaller amounts of marihuana was restricted to marihuana and did not include the concentrated extract of marihuana which contained a higher percentage of tetrahydrocannabinol. The overall provisions of the Controlled Substances Act, as outlined hereinabove, illustrate that only marihuana was meant to be excepted from the provisions of the Act and included

within that portion of the Act providing for a lesser penalty. This is illustrated by the specific exception from the definition of marihuana of the resin extracted from any part of such plant. These are matters which are considered by this Court in determining the legislative intent.

"Notice may be taken of contemporary history, the circumstances of business usage, and the life and habits of the people at the time of the passage of the act. Reference may also be had to legislative history, including the circumstances attending the adoption of an amendment, messages from the executive, debates, committee reports, and legislative proceedings generally. In a proper case, regard will be had to the public or legislative policy, the contemporaneous, executive, departmental, or legislative construction of an act, and any change that may have been made in the statutory language." 53 Tex.Jur.2d, Statutes, Section 167, page 247.

To adopt the construction urged by appellant would create a conflict between the Schedule and the Penalty Groups and prohibit the transfer and possession of natural tetrahydrocannabinols but not the synthetic equivalents.

"The Court will never adopt a construction that will make a statute absurd or ridiculous, or one that will lead to absurd conclusions or consequences, if the language of the enactment is susceptible of any other meaning." 53 Tex.Jur.2d, Statutes, Section 165, page 243.

Considering the act as a whole, we conclude that the Legislature did not intend to, and did not, exclude hashish from the list of controlled substances.

Next, appellant contends that the bail is excessive.

At the habeas corpus hearing on January 24, 1974, the indictment, capias and return in each case were introduced.

Francis Psaroudis, the wife of appellant, testified that she, for her husband, was unable to make the bail of $100,000 but that she could make the bail if it were lowered to $10,000.

■ Ex parte Roberts, Tex.Cr.App., 468 S.W.2d 410, cited Article 17.15, Vernon's Ann.C.C.P., and quoted the applicable rules contained therein for fixing the amount of bail. Among those rules it is stated that "the bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with," and "the nature of the offense [as well as] the circumstances under which it was committed are to be considered." The ability or inability of the accused to make bail does not, alone, control the amount. Ex parte Roberts, supra.

■ The record reflects that the appellant is a Greek citizen with a valid passport and holds a current and valid residency permit allowing him to live and work in the United States. He is alleged to have sold approximately thirty pounds of hashish to a Department of Public Safety under cover agent for $11,000. There is testimony that the value of hashish on the streets is approximately $800 a pound when sold by the pound but there is a discount when purchased in larger quantities.

The maximum punishment for each of these offenses is ten years.

There was evidence adduced that the appellant's family lived with him in Houston and that he had not previously been convicted of any crime. Mrs. Psaroudis testified that her husband would be willing to surrender his passport and exit permit pending disposition of this case.

We hold that hashish is prohibited by the Controlled Substances Act. We hold that the bail is excessive. The order of the trial court setting bail at $50,000 in each case is set aside and bail is set in the sum of $25,000 in each case.

It is so ordered.