**UNITED STATES of America, Appellee,**

v.

**Michael LeMoyne KELLY, Appellant.**

No. 75–2282.

United States Court of Appeals, Ninth Circuit.

Jan. 12, 1976.

---

Linda Judd (argued), Post Falls, Idaho, for appellant.

Dan E. Dennis, Asst. U. S. Atty. (argued), Boise, Idaho, for appellee.

OPINION

Before BROWNING, DUNIWAY and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

This is an appeal from a conviction by a jury on an indictment charging appellant with the crime of knowing and intentional possession of a controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). We affirm.

FACTS

A dog trained to detect narcotics directed a Customs Officer in New York City to a package which was addressed to Kelly at Kooskia, near Coeur d'Alene, Idaho. Smith was named as the return addressee. On opening the package and performing a test, the officer concluded that the substance was hashish, a concentrate of marihuana. The package, after rewrapping, was forwarded to a postal inspector in Spokane, Washington, where another test of the same material indicated the presence of tetrahydrocannabinol [THC], a drug substance found in hashish. After again rewrapping the package, the agents took it to the Post Office in Coeur d'Alene. The hashish— four bags—totalling 448 grams was in a topless record album. The package also contained a pair of pants and some records.

After being notified by the postal clerk that there was an insured package addressed to him at the Coeur d'Alene Post Office, Kelly went to pick up the package. He was told by the postal clerk that his package had been battered in the mail and was asked to inspect the contents. He took the package to a side counter, opened it and inspected the contents, including the first record cover which contained the bags of hashish. He left the Post Office after telling the clerk that the package was all right. These actions, including the inspection, were observed by two government agents.

After leaving the Post Office, Kelly placed the package on the seat of a truck; as he was getting into the truck he was arrested. After being read his *Miranda* rights, Kelly said that he didn't know Mr. Smith, the return addressee, but that he recognized Mike Thompson's handwriting. He said he was expecting a package containing pants and record albums from Thompson, that he had a letter at home referring to the package, but that it did not mention hashish. The letter was not produced at the trial.

One qualified expert testified that he had conducted the usual and customary tests and that in his opinion the substance found in the appellant's possession was hashish, a form of marihuana which contains a greater portion of the active ingredient THC, than does the normal plant. He said that a normal dosage unit of hashish is one-fortieth of a gram. For appellant, a chemist testified that he didn't know the nature of the substance and could not say whether it was or was

not hashish. He was of the belief that a chemist could not render a professional opinion that the substance was a derivative of marihuana.

### ISSUES

We state the principal issues on appeal as follows:

#### I.

Are all species and varieties of Cannabis included in the proscription of 21 U.S.C. § 841, 21 U.S.C. § 812, Schedule I, (c)(10), and 21 U.S.C. § 802(15)?

#### II.

Is the evidence sufficient to establish that Kelly had knowing and intentional possession of hashish, and intended to distribute it, a controlled substance?

### SCOPE OF PROSCRIPTION

The appellant's contention that the hashish under scrutiny is not a controlled substance under the Act of 1970, 21 U.S.C. § 802(15), has been rejected by every circuit which has considered it.

In the First Circuit case of *United States v. Honneus,* 508 F.2d 566 (CA1 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975), it was held that Congress meant to include any and all marihuana producing Cannabis when specifying "Cannabis sativa L." in 21 U.S.C. § 802(15).

The Second Circuit, interpreting the same legislation in *United States v. Kinsey,* 505 F.2d 1354 (CA2 1974), *reaffirmed* the interpretation given in *United States v. Rothberg,* 480 F.2d 534 (CA2 1973), *cert. denied,* 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106, to the same type of definition in the 1937 Act,[1] as amended in 1954.[2]

Advancing to the Fourth Circuit, we find that on October 30, 1974, in the case of *United States v. Sifuentes,* 504 F.2d 845, 849 (CA4 1974), that court arrived at the same conclusion.

The Fifth Circuit in *United States v. Gaines,* 489 F.2d 690 (CA5 1974), in considering the statutory definition of marihuana as set forth in the 1970 Act found itself in full agreement with what had been said on that subject by its sister circuits.

Jumping to the Tenth Circuit, we observe that the court in *United States v. Ludwig,* 508 F.2d 140 (CA10 1974), arrived at the same result, and, in *United States v. Spann,* 515 F.2d 579 (CA10 1975), refused to overturn or modify *Ludwig* and declined the invitation to hold that the statutory definition outlawed only one species of Cannabis.

Finally, we note that in *United States v. Walton,* 514 F.2d 201, 203 (CADC 1975), Chief Judge Bazelon, in an elaborate opinion, painstakingly analyzing the legislative history of the 1937 Act, the amendment of 1954 and the 1970 Act, together with the cases construing their history, arrived at the conclusion that Congress intended the 1970 Act to apply to all *Cannabis.*

The Marihuana Tax Act of 1937, as amended in 1954, the parent of 21 U.S.C. § 802(15), uses language almost identical to that used in 1970 to define "marihuana." Construing the 1937 Act, and the amendment, the Third Circuit in *United States v. Moore,* 446 F.2d 448 (CA3 1971), *cert. denied* 406 U.S. 909, 92 S.Ct. 1617, 31 L.Ed.2d 820, held that at the time of the enactment, the lawmakers, the general public, and most scientists recognized only one specie of marihuana. Hence, all forms of marihuana were included in the statutory definition. The *Moore* court, relying upon pertinent language in *Leary v. United States,* 395 U.S. 6, 50 (1969), concluded that Congress meant the definition of marihuana in 26 U.S.C. § 4761(a) to include the *indicia* variety.

Faced with this array of authority, and numerous state court decisions to the same effect, Kelly's position finds little support other than *United States v. Lewallen,* 385 F.Supp. 1140 (W.D.Wis. 1974). There, the district court granted

---

1. Act of Aug. 2, 1937, 50 Stat. 551.

2. Act of Aug. 16, 1954, 68A Stat. 565.

964

a defense motion for a judgment of acquittal. This action prevented the government from taking an appeal. Of particular significance is the fact that the judge in *Lewallen* relied principally upon *United States v. Collier* (March 19, 1974), an unreported Superior Court case from the District of Columbia. That *Collier* was a slender reed on which to fashion a decision was made clear on March 5, 1975, when the District of Columbia Court of Appeals, *sub silentio* overruled that decision by reversing four other cases where trial judges had dismissed indictments on the same theory. *See United States v. Johnson,* D.C.App., 333 A.2d 393 (March 5, 1975), from which we quote:

> "Much the same argument which persuaded the trial court and is now pressed upon this court in these cases has been made in various jurisdictions, both federal and state, and uniformly rejected by appellate courts. *See Walton v. United States,* 514 F.2d 201."

After exhaustively exploring the history of the legislation consisting of the Act of 1937, the amendment of 1954, and the Act of 1970,[3] we agree with the courts in our sister circuits that Congress intended to outlaw all plants popularly known as marihuana to the extent that those plants possessed THC.

▆▆▆ Fully recognizing, as we must, the well settled rule that criminal statutes are to be strictly construed in favor of an accused, we, nevertheless, hold that this is not a case in which the rule should be applied. Here, we repeat that there was no misapprehension on the part of Congress, at the time of the passage of the controlling legislation, as to the generally accepted meaning of "marihuana." Consequently, we reject the appellant's first contention and follow the lead of our sister circuits.

SUFFICIENCY OF THE EVIDENCE

Next, appellant urges that the evidence is insufficient to prove that he knowingly and intentionally possessed hashish with an intention to distribute. The contention involves two issues: (a) whether appellant knowingly and intentionally possessed the hashish and, (b) whether he had an intention to distribute.

▆▆▆ (a) That appellant was knowingly and intentionally in possession of the hashish at the time of his arrest is made clear by both direct and circumstantial evidence. Appellant said, after receiving his *Miranda* warnings, that he knew a package was coming and that he thought the package contained a pair of pants and record albums mailed by a person named *Thompson.* He said he recognized Thompson's writing on the package, and that he had a letter at home which mentioned the pants and the records, but that it did not mention hashish. Special Agent Carter, who was present in the Post Office when Kelly received the package, testified:

> "He opened the outer folds of the box, at which time when this was exposed, it exposed a pair of men's pants that were directly on top of the record albums.
>
> "I then observed Mr. Kelly reach down into the box and pick up the first album, and this album contained 4 packages of hashish. *The top album was placed in there with 4 packages of hashish. It didn't have a record cover; it was just covered with 4 packages of hashish in there. He looked in there* and turned around, said something to the clerk and folded the box up, and alighted from the door right past me, . . ." [Emphasis supplied.]

From this, the jury could infer that appellant's eyesight was relatively nor-

---

3. For example see: H.R.Rep.No.792, 75th Cong., 1st Sess., 3–4 (1937); S.Rep.No.900, 75th Cong., 1st Sess., 4 (1937); Hearing on H.R.6906 before Senate Comm. on Finance, 75th Cong., 1st Sess., 14, 23–24 (1937); Hearing on H.R.6385 before House Comm. on Ways & Means, 75th Cong., 1st Sess., 18–42, 55, 60–61, 71–72, 76–78, 90–122 (1937); H.R.Rep. No.91–1444 (Part 1, 91st Cong., 2d Sess. (1970)), U.S.Code Cong. & Admin.News, p. 4566; 116 Cong.Rec. 33603–33667, 35484–35559, 36651–36655, *passim,* and 36880–36885 (1970).

mal and that he observed the packages of hashish in the record album when he looked inside at the post office. The fact that appellant did not register surprise when he opened the album is a circumstance which the jury rightly took into consideration in weighing appellant's contention that he was not aware of the presence of the hashish. In evaluating all of this testimony, the jury could well conclude that person innocently receiving a package would register surprise at discovering hashish and make the surprise known to those who were present.

The members of the jury were clearly instructed that unless the evidence in the case convinced them beyond a reasonable doubt that appellant's acts were knowingly made and done their verdict should be not guilty and that if the evidence permitted ". . . either of two conclusions—one of innocence, the other of guilt,—. . ." the conclusion of innocence should be adopted. Moreover, the jury under the instructions was required to find that appellant "intentionally committed the act" before he could be found guilty.

Finding that there is substantial evidence, both direct and circumstantial, upon which the jury could find that appellant was aware of the presence of the hashish when he took possession of the package, we are bound to uphold the verdict.

■ (b) Having concluded that appellant knowingly and intentionally possessed the hashish, we have no difficulty in holding there was substantial evidence, mostly circumstantial, that appellant intended to distribute the drug. It is undisputed that the hashish in the record holder weighed approximately 448 grams. The evidence is clear that the appellant looked into the record album containing the hashish. It would be unrealistic to suppose that he was unaware of the quantity involved. A witness for the government, who had a vast amount of experience in the field, testified that the average dosage unit for a user was approximately one-tenth of a gram and

that the market price of the product was from 10 to 15 dollars per gram. Another witness testified that the average dosage unit was approximately one-fortieth of a gram. Consequently, the undisputed evidence is that 448 grams of hashish was valued on the market at between $4,000.00 and $7,000.00, and would produce somewhere between 4,000 and 18,000 individual dosage units. There is no evidence that appellant was addicted to, or even used, hashish or marihuana in any form. In any event, a jury could well conclude that a person would not possess this large and valuable quantity of hashish for his own use.

■ In analyzing appellant's contentions on these issues, we are governed by the fundamental rule on appeal that the evidence must be viewed in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Kay v. United States*, 421 F.2d 1007, 1010 (CA9 1970). Additionally, we must accept the tenet that all reasonable inferences supporting the verdict are in favor of the government. *Diaz-Rosendo v. United States*, 357 F.2d 124, 129 (CA9 1966), and that it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts. *United States v. Nelson*, 419 F.2d 1237, 1241 (CA9 1969). Another basic rule which we must follow is that circumstantial and testimonial evidence are indistinguishable insofar as the jury fact-finding function is concerned, and that circumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred. *United States v. Nelson, supra*, at 1239; *United States v. Polizzi*, 500 F.2d 856, 904 (CA9 1974). This case is somewhat akin to the recent cases of *United States v. Gutierrez-Espinosa*, 516 F.2d 249 (CA9 1975), and *United States v. Ramirez-Valdez*, 468 F.2d 235 (CA9 1972), in which this court accepted the quantity of drugs possessed by appellants as circumstantial evidence of their intention to distribute them, and affirmed the convictions.

## CONCLUSION

Finding no error, we affirm the judgment of the district court.