Larry Wendell FEW, Appellant,

v.

The STATE of Texas, Appellee.

No. 60215.

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 26, 1979.

Rehearing En Banc Denied Nov. 7, 1979.

---

Percy Foreman, Dick DeGeurin and Mike De Geurin, Houston, for appellant.

Carol S. Vance, Dist. Atty., Calvin A. Hartmann and J. Gordon Dees, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from an order revoking probation. Appellant was originally charged by complaint[1] and thereafter waived indictment and consented to be prosecuted on an information.[2] December 14, 1977 appellant entered a plea of guilty to the felony information, his punishment was assessed at 10 years confinement and a $500.00 fine and the confinement portion of punishment was probated. March 23, 1978 the State filed an amended motion to revoke probation alleging that on the stated date in Harris County appellant "did intentionally and knowingly possess a controlled substance, namely tetrahydrocannabinol." After hearing on the motion before the same trial court and judge that assessed earlier punishment, the trial court found that appellant had violated the terms of his probation in committing the offense of "possession of a controlled substance, to-wit, tetrahydrocannabinol!" and sentenced him to 10 years confinement in the Texas Department of Corrections.

By three grounds of error appellant assails validity of his original conviction by contending that there is a fatal variance between the original complaint and the felony information; that the felony information is facially void in failing to state an offense defined by the penal code, to-wit, "possession of tetrahydrocannibol [sic]" and that the felony information is facially void in failing to allege "an amount of tetrahydrocannibol [sic]" allegedly possessed and, therefore, does not confer district court jurisdiction. Similarly, in his fourth ground of error appellant contends that the motion to revoke is facially void for failing to state an offense defined by the penal code or the controlled substances act. Not otherwise attacking sufficiency of evidence, ground of error number five contends that the proof does not show that defendant possessed tetrahydrocannibols [sic] other than marihuana.

█ The first contention is ruled adversely to appellant by the holding of a divided court in *Chapple v. State*, 521 S.W.2d 280, 282 (Tex.Cr.App.1975) and *Austin v. State*, 531 S.W.2d 615, 616 (Tex.Cr.App.1975); and the unanimous opinion in *Washington v.*

---

1. Alleging in substance that he did . . . intentionally and knowingly possess a controlled substance, namely, *Tetrahydrocannabinols other than marihuana.* (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

2. Alleging in substance that appellant did "intentionally and knowingly possess a controlled substance namely, Tetrahydrocannabinol."

*State*, 531 S.W.2d 632 (Tex.Cr.App.1976)— all to the effect that since no complaint is required when an accused waives the right to be tried on an indictment and elects to be tried on an information, a faulty complaint does not vitiate the information. By the same rule and reasoning we must and do hold that where the accused waives indictment and elects to be tried on an information a variance between an underlying complaint and the information does not render the information void. Ground of error one is overruled.

The next three grounds of error, asserting that the original information and subsequent motion to revoke are each facially void, require that we examine again [3] pertinent provisions of the Texas Controlled Substances Act. We begin our analysis with a brief restatement of relevant botanical facts in an historical context.

Cannabis sativa L. is the name bestowed on the Indian hemp plant by the Swedish botanist Carolus Linnaeus. Early and late others have asserted and claimed recognition for different species of the plant but have yet to persuade the courts that the genus Cannabis sativa L. does not embrace any other species, kind or variety of hemp plant.[4] What all do agree on, however, is that as the plant ripens to maturity it develops within and secretes upon especially its flowering tops and leaves a resin whose chemical structure has come to be known as tetrahydrocannabinol—THC, for short.

This chemical is psychoactive ingredient responsible for euphoriant and hallucinogenic properties of the plant and its products.

In one form or another substances derived from the plant have been given various names. "Cannabis" is broadly used in several other countries and in the literature to embrace the plant and many of its substances. "Marihuana" originated in Mexico and actually means a preparation of chopped leaves and stems of the plant that resembles tobacco.[5] "Bhang" is the Indian smoking mixture of cannabis, similar to marihuana, in that it is a coarse powder derived from leaves of the plant. "Ganja" is prepared from the flowering tops of cultivated female plants and is smoked. "Charas" is resin of the pistillate flower of specially cultivated plants that is gathered by various exotic methods from the clean uncut plant, for the superior grade, and from the tops of harvested plants for the slightly weaker grade. The former is usually shaped into tiny tapering sticks or cakes whereas the latter is sold as brownish green lumps or flattened in bags of rawhide. "Hashish" corresponds to the second grade of Indian charas and may appear as a flattened cake or a thin sheet compacted into a form that resembles the sole of a shoe, but by the time it reaches an ultimate consumer hashish has become more of a dry granular or coarse powdery substance.[6]

When uniform narcotic drug laws were enacted in the thirties, the prohibited sub-

3. In *Ex Parte Psaroudis*, 508 S.W.2d 390 (Tex. Cr.App.1974) the indictment alleged that the accused delivered "hashish" to another and after assaying the structure and phrases of the Texas Controlled Substances Act in light of what was thought to be germane legislative history, this Court held that hashish is a prohibited controlled substance within the meaning of Section 4.02(c), Penalty Group 2(N). But a finding that hashish is a prohibited substance is not a holding that an indictment or, as in this case, an information alleging possession of "Tetrahydrocannabinol" or a motion to revoke probation alleging possession of "tetrahydrocannabinol" is sufficiently definite to state an offense.

4. See generally *U. S. v. Kelly*, 527 F.2d 961 (9th Cir. 1976) and cases therein summarized or cited.

5. For an interesting comparison of assimilation by this Court of information then available, see *Baker v. State*, 123 Tex.Cr.R. 212, 58 S.W.2d 534 (1933).

6. See generally, Grindspoon, *Marihuana Reconsidered*, Harvard University Press, 1971, Chapter Two; Bloomquist, *Marihuana*, Glencoe Press, 1968, 8–10; McGlothlin, "Cannabis: A Reference," *The Marihuana Papers*, The New World Library, 1966, 456.

See also expert testimony in *State ex rel. Hubbard v. Spillers*, 202 S.E.2d 180 (W.Va. 1974). In the instant case experienced toxicologist and chemist Floyd E. McDonald testified that in pieces of the substance he examined he found epithelial hairs present, explaining that that is the "flexible silky hair on the underside of the leaf" of the plant.

stance was "marihuana" in the Federal act while Texas called it "cannabis" and took note of and included varieties of cannabis known "as Marihuana, Hashish and Hasheesh," Article 725b, V.A.P.C., 1925 as amended. But as learning improved and synthetic drugs were developed and abused, legislative bodies enacted "dangerous drug" laws. Persistent efforts led to successful synthesizing of THC about 1960, so that synthetic THC soon became available as a substitute for the organic substance.[7] Contemporaneously, conventional wisdom held that drugs, substances and their immediate precursors should be controlled and regulated under one umbrella controlled substances act.

■ Accordingly, the Congress enacted the Comprehensive Drug Abuse and Control Act of 1970, 21 U.S.C. Sec. 801 *et seq.* and the same year the National Conference of Commissioners on Uniform State Laws recommended a uniform controlled substances act to the states, 1970 Handbook 223, 225. The format of both was to categorize substances into schedules according to prescribed criteria and each continued to deal with cannabis substances through the definition of marihuana.[8] As did the Federal Act, the draft Uniform State Act included in its Schedule I of Controlled Substances: [9]

"(d) Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances . . . :

* * * * * *

(10) Marihuana

* * * * * *

(17) Tetrahydrocannabinols"

By thus defining marihuana and listing it separate and apart from tetrahydrocannabi-

nols, the clear purpose and intent of the drafters was that the latter meant and included only synthetic THC. *U. S. v. Wuco*, 535 F.2d 1200 (9th Cir. 1976) *cert. denied*, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976). Under this statutory scheme marihuana includes everything that contains organic THC, *U. S. v. Walton*, 168 U.S.App. D.C. 305, 514 F.2d 201 (1975) including hashish, *U. S. v. Kelly*, 527 F.2d 961 (9 Cir. 1976).

Our Legislature, however, departed from the format and content of the Federal statute and proposed uniform controlled substances act. First, it defined marihuana in Sec. 1.02(17) so as to specifically exclude "the resin extracted from any part of such plant and any compound . . . or preparation of the resin." Then in listing substances in schedules, Sec. 2.03(d) enumerates separately:

"(10) Marihuana;

* * * * * *

(17) Tetrahydrocannabinols and synthetic equivalents of the substances contained in the plant, or in the resinous extractives of cannabis, or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity such as the following (stating chemical formulas for THC)."

And in listing substances in Penalty Group 2, Sec. 4.02(c) enumerates among other hallucinogenic substances:

"(N) Tetrahydrocannabinols other than marihuana and synthetic equivalents of the substances contained in the plant, or in the resinous extractives of cannabis . . ."

growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture . . . or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant . . . or preparation of such mature stalks (except the resin extracted therefrom) fiber, oil, or cake, or the sterilized seed . . ."

7. McGlothlin, op. cit., supra, reported in 1965 that some 80 derivatives of THC had been synthesized.

8. The Federal Act, 21 U.S.C.A. Sec. 802 (15) is practically identical to the definition in the draft Uniform Controlled Substances Act proposed by the National Conference of Commissioners:

"(15) The term 'marihuana' means all parts of the plant Cannabis sativa L., whether

9. Section 204(d), 1970 Handbook at 234.

And marihuana separately is not listed in any penalty group but is dealt with apart therefrom in Sec. 4.05.

█ From this format and content we must believe that drafters of the modifications, especially as pertaining to tetrahydrocannabinols, were not aware of the purpose and intent of the National Conference of Commissioners that the term embrace only synthetic THC—otherwise they would not have added the language "and synthetic equivalents of the substances contained in the plant . . ." The additional language and insertion of the phrase "other than marihuana" in Penalty Group 2 reflects the notion that the plural "tetrahydrocannabinols" is meant to include organic THC except in marihuana—as well as the synthetic chemical. Thus any material, compound, mixture or preparation which contains any amount of the hallucinogenic substance tetrahydrocannabinol—other than in marihuana—is within the contemplation of Penalty Group 2. So embraced, then, is any preparation that contains organic resin extracted from the plant or synthetic THC in whatever form and under whatever name. In this fashion the Legislature greatly expanded what was the more restricted definition of tetrahydrocannabinols in the draft uniform act and the Federal law. See *Kirkland v. State*, 373 S.W.2d 756, 758 (Tex.Cr.App.1963).

█ The Legislature further found that its category of "tetrahydrocannabinols" includes marihuana. So in listing organic and synthetic hallucinogenic substances in Penalty Group 2, to reflect its

policy determination of lesser penalties for THC in smaller amounts of marihuana—as this Court discerned in *Psaroudis*, supra,—it became necessary to list the offending substances as "tetrahydrocannabinols other than marihuana." This Court is, and has consistently held itself, bound to accept the legislative characterization or classification of prohibited substances regardless of how the scientific community views them.[10]

Against this background, then, we turn to direct consideration of grounds of error two and three and the question is whether a charging instrument that identifies the proscribed controlled substance only as "tetrahydrocannabinol" is sufficient to allege an offense.[11]

█ By definition an indictment or information is a written statement "accusing a person therein named of some act or omission which, by law, is declared to be an offense." Art. 21.01, V.A.C.C.P. It was a familiar rule then, and still is, that "where an offense is defined by our statute (and there are none other in this State), all of the essential elements of the offense must be alleged in the indictment," *Rice v. State*, 37 Tex.Cr.R. 36, 38 S.W. 801 (1897). Likewise, an indictment drawn in the language of the statute creating and defining an offense is ordinarily sufficient, *Burney v. State*, 171 Tex.Cr.R. 274, 347 S.W.2d 723, 725 (1961). Thus, we first note here that the information is *not* drawn in the language of the statute in that it omits the phrase "other than marihuana." But, from the holding of *Psaroudis*, supra, the State

---

10. Thus, in law, marihuana was a "narcotic drug" in Texas for many years and long after widely regarded research held otherwise. See, e. g., *Fawcett v. State*, 137 Tex.Cr.R. 14, 127 S.W.2d 905 (1939); *Fletcher v. State*, 162 Tex. Cr.R. 100, 282 S.W.2d 230 (1955); *Gonzales v. State*, 163 Tex.Cr.R. 432, 293 S.W.2d 786, 787 (1956); "The statutory definition makes cannabis a narcotic drug;" *Gonzalez v. State*, 168 Tex.Cr.R. 49, 323 S.W.2d 55, 56 (1959): "Marihuana is a narcotic drug. Art. 725b, Secs. 13 and 14."

11. During the course of the proceedings following filing of complaint and information and through judgment and order placing him on probation, appellant did not move to quash or

otherwise except to the substance of the information as provided by, e. g., Art. 27.08. See generally, *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Cr.App.1974) for explication of an exception to form as opposed to an exception to substance. During revocation proceeding, however, appellant did move to quash the original information and judgment as facially void on substantially the same basis now advanced in grounds of error two and three. Nevertheless, the motion to quash made at the revocation proceeding may not relate back to the original trial, so the question here is still whether the information is void for grounds asserted on appeal.

argues that because marihuana is excluded from Penalty Group 2 by the very phrase and Sec. 5.10(a) of the Act makes it unnecessary to negate an exemption or exclusion, the information need not include the phrase "other than marihuana." We disagree.

As already demonstrated in discussing botanical and pharmacological facts of the matter and reviewing statutory language, merely alleging THC embraces not only marihuana but every other organic and synthetic substance that is found to contain THC. The testimony of chemist McDonald in this case makes the point when he acknowledged that there was no definite "line of demarcation scientifically recognized between marihuana on the one hand and hashish on the other." [12] Thus, merely alleging the controlled substance as THC does not inform, define or draw the line between offenses as this Court concluded in *Ex Parte Psaroudis* that the Legislature meant to do and did.

The early *Rice* case, supra, illustrates the point. In that statutory rape case the indictment alleged every statutorily prescribed element of the offense but "other than the wife of the person." After stating the familiar rule, set forth above, this Court pointed out that it had held "that it is incompetent for even the legislature to create an exception to this rule." Then, after reviewing other authorities, the *Rice* opinion concludes:

"Applying this rule to the construction of this statute, it will be seen that the words 'other than the wife of a person' occur in the body of the enacting clause. The offense cannot be read without reading this . . . (and) under the rule heretofore laid down, the indictment should negative the fact that the alleged injured female was the wife of the defendant."

What the State fails to recognize in its argument is that on this subject there are two distinct rules, one or the other applicable depending upon circumstances, as was painstakingly pointed out in *Lowery v. State*, 79 Tex.Cr.R. 382, 185 S.W. 7 (1916):

"There are two rules, each fully and well established—one, that when a statute prescribes an offense, and also therein contains an exception or proviso which is made a constituent or necessary part of the offense, then such exception or proviso must be negatived by proper allegation in the indictment or information to make a good pleading. The second is that where the exception or proviso is not made a constituent or necessary part of the offense by the statute itself, then it is wholly unnecessary for the indictment or information to negative such exception or proviso." [13]

The familiar rule applied in *Rice* caused this Court to hold in *Anderson v. State*, 132 Tex.Cr.R. 37, 105 S.W.2d 258 (1937) that an indictment alleging that a permit holder sold liquor on Sunday but failed to negative the statutory part of the statute that provided "(except upon prescription of a duly licensed physician)" was fatally defective and, furthermore, notwithstanding the fact that the act then in effect contained a provision almost identical to Sec. 5.10(a) of the Controlled Substances Act here, the *Anderson* opinion noting and holding:

". . . but this court has uniformly held that where the exception is written in the body of the law, and, as said in some cases, is made a part of the enacting clause of the statute itself, we cannot give application to the terms of Sec. 9, supra. The exception is so clearly made a

---

12. Explaining a "sort of an overlap," McDonald noted a particular form of marihuana derived from specially cultivated female plants in which the THC content was greatly increased and, he continued, "Well, now, of course, some THC, if it were a rather poor extract, might be less than 6%. So you couldn't base it entirely on the concentration of THC. I'm not exactly sure where you could draw the line. It's sort of an overlapping area."

13. *Lowery* was convicted for unlawfully prescribing morphine to an habitual user under an indictment that did not include the statutory proviso to the effect that it was not unlawful for an authorized practitioner to prescribe such substances for the treatment of the habitual user. This situation came under the second rule, so the court held the indictment need not negative the proviso.

part of the offense, and is so plainly written into the very definition and description of the offense that one cannot be read without the other."

■ So, here, the phrase "other than marihuana" is a constituent element of the offense—albeit a negative one. Having structured the statutory provisions with which we are here concerned in the manner it did, the Legislature obviously chose to delineate marihuana and other THC offenses by prescribing the latter as it did— "tetrahydrocannabinols other than marihuana." Only in that fashion is the latter offense stated and, likewise, only in that fashion is it to be alleged by indictment or information.

Given the Legislative understanding, then, we must conclude that a charging instrument alleging possession of THC— without more, not only fails to allege an offense under state law—the felony offense of "tetrahydrocannabinols other than marihuana"—but also, because THC—without more—embraces marihuana, fails to state the elements essential to determine the jurisdiction of the court to try the case and the range of punishment which may be assessed. See *Mears v. State*, 520 S.W.2d 380 (Tex.Cr.App.1975), following the rule of *Standley v. State*, 517 S.W.2d 538, 540–541 (Tex.Cr.App.1975) and its progeny, including, *Huggins v. State*, 544 S.W.2d 147 (Tex.Cr.App.1976); *Peoples v. State*, 566 S.W.2d 640 (Tex.Cr.App.1978) and, most recently, *Ex Parte Barcelo*, 577 S.W.2d 499 (Tex.Cr.App.1979).

■ For these reasons we must hold the original conviction invalid and set aside that judgment. The remaining grounds of error need not be decided but we would observe that a motion to revoke may be a less precise pleading and possession of any THC substance is unlawful—whether it misdemeanor or felony is irrelevant for the trial court that has jurisdiction to decide the motion. Similarly, once evidence is adduced by the State at hearing on motion to revoke that the defendant possessed a THC substance—whether it marihuana, hashish, or whatever—the discretion of the trial court to revoke probation is raised. That a chemist cannot draw a line of demarcation between marihuana and some other THC substance goes to the weight of his testimony, not its admissibility, and without being disputed may well be considered by the trial court to constitute that preponderance of evidence necessary to revoke probation.[14]

It is ordered that the sentence imposed be set aside, the judgment of the trial court be reversed and prosecution on the instant information be dismissed.

---

DALLY, Judge, concurring.

Appellant was originally convicted on a felony information which charged him with possession of "a controlled substance, namely tetrahydrocannabinol." Appellant claims that this information was void because it failed to state an offense and because it was not specific enough to confer jurisdiction upon the district court. I write merely to help clarify the resolution of this issue.

Tetrahydrocannabinol, commonly referred to as THC, is a chemical term for the resin secreted by the plant Cannabis Sativa L. and THC is that plant's key psychoactive ingredient. Marihuana is statutorily defined as the plant Cannabis Sativa L. or any of its derivatives. V.A.C.S., Art. 4476–15, Sec. 1.02(17). If the resin, i. e., the THC, is extracted from the plant, those extracts are excluded from the definition of marihuana. Id. These extracts and their derivative preparations, such as hashish, generally contain higher concentrations of THC and are separately treated as "tetrahydrocannabinols." *Ex parte Psaroudis*, 508 S.W.2d 390 (Tex.Cr.App.1974).

Any material "other than marihuana" which contains any quantity of natural or

---

14. Dealing with the problem we have decided in this case, although we are not called upon to determine and do not necessarily do so, an indictment or information should be sufficient if it met other requisites and then described the offense as "a controlled substance, to-wit: a material, compound, mixture and preparation, other than marihuana, containing tetrahydrocannabinol, commonly known as ——."

synthetic THC is proscribed in Penalty Group 2 of the Controlled Substances Act. V.A.C.S., Art. 4476–15, Sec. 4.02(c). Possession of a substance listed in Penalty Group 2, in any quantity, is a third degree felony. Id., Sec. 4.04. Marihuana is defined and treated outside the penalty groups of the Act and possession of a "usable quantity" of marihuana may be a third degree felony, a Class A misdemeanor, or a Class B misdemeanor, depending on the amount possessed.

This information charged possession of tetrahydrocannabinol but left out the qualifier "other than marihuana." Marihuana, as statutorily defined, contains tetrahydrocannabinol if its resin has *not* been extracted. Therefore, by leaving out the qualifying phrase, it is unclear whether this information charged the possession of marihuana or the possession of THC other than marihuana.

Possession of marihuana, unlike possession of THC other than marihuana, may or may not be a felony offense depending on the amount alleged. Where, as in this case, no amount was alleged, the information permits uncertainty as to whether the district court had jurisdiction over the case and this uncertainty renders the information void. *Ex parte Barcelo*, 577 S.W.2d 499 (Tex.Cr.App.1979); *Mears v. State*, 520 S.W.2d 380 (Tex.Cr.App.1975). This specific attack on the original information may be raised on appeal from a revocation of probation. *Peoples v. State*, 566 S.W.2d 640 (Tex.Cr.App.1978). Although the conviction must be reversed, I do not believe that a comprehensive discussion of the nature of marihuana or of the background of current federal and state legislation is necessary to a decision in this case.

W. C. DAVIS, Judge, dissenting.

I dissent to the majority's conclusion that:

".  .  . a charging instrument alleging possession of THC—without more, not only fails to allege an offense under state law—the felony offense of 'tetrahydrocannabinols other than marihuana'—

but also, because THC—without more— embraces marihuana, fails to state the elements essential to determine the jurisdiction of the court to try the case and the range of punishment which may be assessed."

The majority isolates the phrase "other than marihuana" and holds that phrase to be a constituent element of the felony offense of possession of THC. Such a conclusion is not warranted by the Controlled Substances Act. V.A.C.S., Art. 4476–15 or *Ex parte Psaroudis*, 508 S.W.2d 390 (Tex.Cr. App.1974). Further, I am convinced that the majority's interpretation of the statutory provisions is not only incorrect but also unnecessary. The issue here is not statutory construction. Our concern should be whether the appellant was properly notified that he was charged with an offense.

In three grounds of error, without citation of authority, appellant contends that both the original information and the subsequent motion to revoke probation were void on their face, claiming that an allegation of possession of THC, without the magic words "other than marihuana" does not state an offense. The majority agrees and by broadly defining THC, holds that in the absence of the phrase "other than marihuana," no offense is alleged.

The key to the majority's position is the determination that the term THC embraces and includes marihuana. After a recitation of certain botanical and pharmacological facts, coupled with brief review of federal authority, the majority concludes:

".  .  . merely alleging THC embraces not only marihuana but every other organic and synthetic substance that is found to contain THC."

Therefore, concludes the majority, the "other than marihuana" language is necessary to inform the appellant he is being charged with possession of THC other than that naturally occurring in and still confined, at prosecution, to marihuana plants.

While I have no quarrel with the background material supplied by the majority, the concern here is not with the chemical

composition of the marihuana plant.[1] Rather, the issue is the legal definition of THC and whether that term used alone is sufficient to allege an offense. After a thorough examination of the Controlled Substances Act and the reasoning of the majority, I am convinced that the legal definition of THC should be:

every organic and synthetic substance found to contain tetrahydrocannabinols in any form, except marihuana.

The Controlled Substances Act deals with marihuana and THC as follows:

(1) Sec. 1.02(17), marihuana means:

". . . the plant Cannabis sativa L., whether growing or not; the seeds thereof; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, or its seeds. However, it does not include the resin extracted from any part of such plant or any compound, manufacture, salt, derivative, mixture, or preparation of the resin; nor does it include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination."

(2) Sec. 2.03(10) and (17), separately lists marihuana and THC under Schedule I.

(3) Sec. 4.02(c), Penalty Group Two, proscribed penalties for possession of THC, "other than marihuana."

(4) Sec. 4.05, contains penalty for marihuana.

The Legislature, throughout the Controlled Substances Act, treats marihuana and THC separately. The two are listed separately in Schedule I and different penalties are proscribed for each. Such separation means only that the Legislature intended the separate treatment of marihuana and THC. Such intent is evident on the face of the definition of marihuana. Clearly, this definition includes only the green leafy substance with seeds, whether on the plant or separated, which is known commonly as grass, or pot, or marihuana. Clearly, marihuana cannot be the concentrated chemicals, or resins of the plant, nor can marihuana legally be the isolated chemical compounds. The term THC then covers these organic derivatives and is exclusive of the green plant-like substance marihuana.[2]

Based on these interpretations of the terms marihuana and THC, the phrase "other than marihuana" is merely redundant and is not a constituent element of the felony offense of possession of THC. The terms "other than marihuana" are not necessary to an understanding of an information alleging possession of THC. The term THC stands alone and is sufficient to allege an offense. Art. 21.01, Vernon's Ann.C.C.P. Since an allegation of possession of THC alleges an offense, the State was relieved of the burden of negating any exemption or exception by Sec. 5.10(a) of the Controlled Substances Act.

Assuming, arguendo, that THC does embrace and include marihuana, the information alleges possession of a controlled substance which is prohibited by the Controlled Substances Act. Such an allegation is sufficient to allege an offense, and if the appellant was unsure whether he was being prosecuted for possessing a green plant-like substance or a refined chemical substance, he should have filed a motion to quash the original information.

I would hold the information is sufficient to allege an offense.[3]

---

1. As the majority notes, the legal definition of a drug may be at variance with the scientific meaning; however, this Court is bound by the legislative characterization. See footnote 10 of majority opinion.

2. Revisions of Schedule I under Sec. 2.03(d) by the Commissioner of the Texas Department of Health dated August 21, 1978, reinforce this distinction.

3. The majority relies to some degree on *Ex parte Psaroudis*, 508 S.W.2d 390 (Tex.Cr.App. 1974). That case held that the language "other than marihuana" excluded only the legally defined plant substance, not the refined hashish.