

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00181-CV

In the **INTEREST OF J. B.-F.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-00460
Honorable Antonia Arteaga, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  July 25, 2018

AFFIRMED

Anna[1] appeals the trial court's order terminating her parental rights to her son J.B.-F. Anna's sole issue on appeal is that there is legally and factually insufficient evidence that termination of her parental rights is in the child's best interest. We affirm the trial court's order.

## BACKGROUND

J.B.-F. was born March 1, 2017, with THC[2] in his system. At the time, Anna was in an early intervention program with the Department of Family and Protective Services as the result of a referral involving an older child. On March 6, the Department filed an original petition for

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to appellant by a fictitious name and refer to children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2017); TEX. R. APP. P. 9.8(b)(2).

[2] THC, or tetrahydrocannabinol, is the "psychoactive ingredient responsible for euphoriant and hallucinogenic properties of the plant [Cannabis sativa L.] and its products," including marihuana. *Few v. State*, 588 S.W.2d 578, 581 (Tex. Crim. App. 1979).

conservatorship of J.B.-F. and to terminate Anna's parental rights.[3] The trial court granted the Department temporary conservatorship of J.B.-F., but he was allowed to stay with Anna, who had voluntarily entered an inpatient treatment center.

Anna completed inpatient treatment, and she and J.B.-F. moved in with a relative. Anna entered the Lifetime Outpatient Recovery program, where she was progressing well. However, in September 2017, Anna asked the Department to place J.B.-F. in foster care because she "could not provide for him." She subsequently tested positive for cocaine and disclosed that she was living in a "trap house," where she and others packaged and sold cocaine. On October 13, 2017, the trial court signed an order that Anna have no contact with J.B.-F. until further ordered. The trial court later ordered Anna could have supervised visitation with J.B.-F. until such time as she completed her service plan and was able to provide a safe and stable environment. However, Anna moved to Hawaii in November 2017, where she remained until trial. At the time of trial, Anna was living with a friend and enrolled in an outpatient program, and Anna testified she had been "clean" since the end of November. But she had not visited with J. B.-F. for five months.

The case was tried to the court in March 2018. The witnesses included Anna's caseworker in early intervention, Ruchi Rodriguez, the legal worker assigned to this case, Katy Walston, Anna's counselor at Lifetime Recovery, Anna, and the friend with whom Anna was living in Hawaii at the time of trial. After the bench trial, the court found by clear and convincing evidence that Anna:

> engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department for not less than six months and (1) the Department has made reasonable efforts to return the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child;

---

[3] The record establishes that J.B.-F.'s father was shot and died in January 2017.

and (3) the mother has demonstrated an inability to provide the child with a safe environment;

failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance; and

[was] the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by § 161.001(a)(1) and § 161.001(a)(2).

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N), (O), (P), (R) (West Supp. 2017). The trial court also found that termination of her parental rights is in the child's best interest. *See id.* § 161.001(b)(2). On appeal, Anna does not contest the statutory grounds for termination, but argues that there is legally and factually insufficient evidence to support the trial court's finding that termination of her parental rights is in J.B.-F.'s best interest.

## STANDARD OF REVIEW

The trial court's order of termination must be supported by clear and convincing evidence. *Id.* § 161.001(b). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2014). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401

S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable credibility determinations. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

When we review for legal sufficiency, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, a court must also presume that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2017). In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *See In re C.H.*, 89 S.W.3d at 27-29. And, in determining whether the child's parent is willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code. *See* TEX FAM. CODE ANN. § 263.307(b). In addition to these statutory factors, a court may consider evidence about the desires of the child; the emotional and physical needs of the child now and in the future; the

emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *accord In re C.H.*, 89 S.W.3d 17 at 27. These factors are not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when the evidence shows the parental relationship endangered the child's safety. *Id.* at 28. And, although the mere fact that an act or omission occurred in the past does not establish that termination is currently in the child's best interest, a parent's past conduct is probative of her future conduct when evaluating the child's best interest. *See id.*; *In re O.N.H.*, 401 S.W.3d at 684.

### DISCUSSION

Department employees Ruchi Rodriguez and Katy Walston both testified Anna has not shown the ability to apply the lessons she was taught in treatment and services and has not adequately addressed the issues that resulted in J.B.-F.'s removal in the first instance. Rodriguez was Anna's caseworker in the early intervention program involving Anna's older son, from 2015 to 2017. Rodriguez testified J.B.-F.'s father was a perpetrator of domestic violence, and although Anna completed domestic violence services and was counseled repeatedly about maintaining healthy relationships and to stay away from the father, she returned to her abuser, continued the unhealthy relationship, and had another child — J.B.-F. — with him. As part of her plan in this case, Anna was required to participate in counseling to address domestic violence, but she failed

to do so. During the pendency of this case, Anna filed a police report alleging she had been assaulted by a man. There was evidence the perpetrator was the son of the person with whom Anna was living, but Anna testified she did not consider it an incident of domestic violence because she was not in a sexual relationship with the man. She also testified she did not believe she needed further domestic violence counseling because she had completed a class in her previous case. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (in determining whether parent can provide safe environment, court should consider history of abuse or assaultive conduct by persons who have access to child's home).

Caseworker Walston testified Anna has not shown she is able to stay drug-free outside of an intensive treatment program. When J.B.-F. was born in March 2017, Anna was in an early intervention program; nevertheless, she smoked marijuana during her pregnancy, and J.B.-F. had THC in his system at birth. When Anna tested positive for cocaine in early October 2017, she had successfully completed an inpatient drug treatment program and was close to being successfully discharged from an outpatient program. Anna contends the test was not really positive, as evidenced by a negative result on a test administered forty-five minutes later. She explained to her caseworker the positive result was probably because she was packaging and selling cocaine, and it was flying around in the air. She admitted to her caseworker she was living in a home with a large group of people who were dealing drugs. Further, Anna admitted in her testimony that she used illegal drugs as late as the end of November 2017. After being unsuccessfully discharged from the first outpatient program because of the positive drug test, she waited several months, until she moved to Hawaii, to enroll in another program. At the time of trial, Anna had completed an intensive outpatient program in Hawaii and was engaged in a regular outpatient program. Caseworker Walston testified that she verified Anna's participation and that Anna was receiving counseling as part of the program, was participating in AA and NA, and had tested negative on

rapid drug screens since her initial intake. Walston acknowledged that Anna was making progress, but opined that Anna had not yet shown an ability to remain drug free and keep her child safe in a safe environment when she was not in intensive treatment. "A parent's drug use supports a finding that termination is in the best interest of the child. The factfinder can give 'great weight' to the 'significant factor' of drug-related conduct." *In re L.G.R.*, 498 S.W.3d 195, 204–05 (Tex. App.— Houston [14th Dist.] 2016, pet. denied) (citation omitted); *see* TEX. FAM. CODE ANN. § 263.307(b)(8) (court should consider history of substance abuse in determining parent's ability to provide safe environment).

Caseworker Walston testified Anna's family service plan required her to take parenting classes that addressed drug use, domestic violence in relationships, stable housing, and income, and then demonstrate that she understands how these issues are critical to caring for a child. Although Anna testified she took a parenting class while in Hawaii, Walston testified the class did not meet the Department's requirements because it was an online course that was only several hours long and the curriculum was addressed to co-parenting after a divorce. Moreover, Anna was unable to demonstrate anything she might have learned in the class because she had not visited J.B.-F. since moving to Hawaii. Anna's failure to demonstrate adequate parenting skills supports the trial court's finding. *See* TEX. FAM. CODE ANN. § 263.307(b)(12).

Anna's failure to address her own mental health needs also supports the trial court's finding. *See id.* § 263.307(b)(6), (10). The psychologist who evaluated Anna at the beginning of the case found she suffered from anxiety, depression, and a mood disorder, and recommended she obtain a psychiatric evaluation and engage in any recommended treatment. Walston testified she had not received any evidence that Anna had obtained a psychiatric evaluation. When asked whether she was engaged in psychiatric treatment, Anna responded that she was going to AA and NA and "speak[ing] with positive people."

Walston testified that Anna had not established either stable employment or housing and thus had not shown she could meet J.B.-F.'s needs. Anna testified she was living with a friend in Hawaii and was working two jobs, which she had had since January 2018. Anna testified she worked at IHOP and as a home health provider. Caseworker Walston testified Anna had sent her a pay stub from IHOP, and she had verified Anna was working there, but that she had only seen two paychecks since Anna moved to Hawaii. Anna testified that she paid her friend rent and contributed food stamps, and that there was a room available for J.B.-F. Anna's friend testified he had been supporting Anna while she attended classes and therapy, provided her a place to live, and helped her get transportation. He testified Anna had "been pretty much doing everything else on her own." However, Anna herself testified that she knew she was "not stable at the moment." Walston testified that Anna had not shown the ability to maintain stable housing because she was in and out of the homes of friends and family or in inappropriate housing throughout the entire case.

At the time of trial, J.B.-F. had just turned one year old and was thus too young to express his desires. In that circumstance, the factfinder may consider whether the child has bonded with a foster family, is well cared for by them, and has spent minimal time with the parent. *In re M.C.L.*, No. 04-17-00408-CV, 2017 WL 5759376, at *3 (Tex. App.—San Antonio Nov. 29, 2017, no pet.) (mem. op.). Caseworker Walston testified J.B.-F.'s older brother had been adopted by his foster family after Anna voluntarily relinquished her parental rights. J.B.-F. was placed in the same home in October 2017. Walston testified the child had bonded to his foster parents. She testified the foster parents were meeting J.B.-F.'s needs and they wanted to adopt him, and that she saw no barriers to their adopting him.

There is evidence that Anna had a strong bond with J.B.-F. until she asked he be placed in foster care, when he was six months old. Walston testified she met with Anna after J.B.-F. was

placed in foster care and explained to her that it was important for her to visit with him, maintain the bond, and support him. To do this she would need to test clean and obtain stable housing. Nevertheless, Anna chose to move to Hawaii, which prevented her from visiting the child. At the time of trial, she had not had a visit with him for over five months, and Walston testified the child no longer had any bond with Anna. Anna did not provide any kind of support during her absence, and assuming she learned parenting skills, her absence prevented her from being able to demonstrate them.

Having reviewed all of the evidence, we hold a reasonable factfinder could have formed a firm belief or conviction that termination of Anna's parental rights is in J.B.-F.'s best interest. We therefore affirm the trial court's order.

Luz Elena D. Chapa, Justice