Glenn **JOHNSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07–81–0077–CR.

Court of Appeals of Texas, Amarillo.

May 13, 1982.

Bruce Sadler, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., Arnold N. Miller, Asst. Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C. J., and DODSON and COUNTISS, JJ.

DODSON, Justice.

Glenn Johnson appeals from the trial court's order revoking his probation. He was placed on probation after a jury found him guilty of aggravated robbery. One of the terms of the probation was that the appellant commit no offense against the laws of this State or of any other State or of the United States. By motion to revoke, the State alleged that the appellant had violated the conditions of his probation by "intentionally and knowingly possess[ing] a controlled substance, namely Tetrahydrocannabinol, other than marihjuana [sic]." After a hearing on the motion, the court revoked the appellant's probation. Concluding that the appellant's four grounds of error do not present cause for disturbing the trial court's revocation order, we affirm.

In his first ground of error, the appellant maintains that the trial court erred by failing to quash the State's amended motion to revoke the order for probation because the amended motion was filed in violation of article 42.12 § 8(a) of the Texas Code of Criminal Procedure. In pertinent part this article provides:

> The state may amend the motion to revoke probation any time up to seven days before the date of the revocation hearing, after which time the motion may not be amended except for good cause shown, and *in no event may the state amend the motion after the commencement of taking evidence at the hearing.* [Emphasis added.]

The record shows that on 6 March 1981 the State filed a motion to revoke the order for adult probation alleging that "[o]n the 17th day of February, 1981, in Potter County, Texas, Glenn Johnson did then and there unlawfully and knowingly possess a controlled substance, to-wit: Hashish." On 28

April 1981 the court heard the motion. After the parties closed, the State moved to dismiss the motion stating, "Based upon our Motion to Revoke which alleges that the offense occurred on the 17th day of February of 1981 and in light of the fact that the evidence has disclosed that the offense actually occurred on the 14th day of February, 1981, we would move to dismiss the Motion to Revoke at this time." The court granted the motion.

Subsequently, on 28 April 1981, the State filed a second motion to revoke the order for probation alleging, "The said Defendant failed to comply with the first condition of his probation in that on or about the 14th day of February, 1981, in the County of Potter, State of Texas, the said Defendant did then and there intentionally and knowingly possess a controlled substance, namely, Tetrahydrocannabinol, other than marijhuana [sic]." After a hearing on 11 June 1981, the court revoked the appellant's probation.

■ Relying on that portion of article 42.12 § 8(a) which states, "and in no event may the State amend the motion after the commencement of taking evidence at the hearing," the appellant argues that the trial court erred in failing to quash the second motion because it is entitled "Amended Motion to Revoke Order for Adult Probation." We disagree. The referenced portion of article 42.12 § 8(a) does prohibit the State from amending a motion for revocation "after the commencement of the taking of evidence at the hearing" on such motion. The rationale for the rule is to prevent the State from adding new or different grounds for revocation as a result of evidence adduced at the hearing on that particular motion. However, we find nothing in the referenced article which precludes the State from obtaining a dismissal of the motion and subsequently filing a second motion to revoke the probation. The appellant's first ground of error is overruled.

■ By his second ground of error, the appellant says the trial court erred in failing to grant his "special plea of double jeopardy to the State's amended motion to

revoke order for adult probation." Similar contentions were presented to, and overruled by, the Court of Criminal Appeals in *Davenport v. State*, 574 S.W.2d 73, 74–75 (Tex.Cr.App.1978); *Banks v. State*, 503 S.W.2d 582, 584 (Tex.Cr.App.1974); *Bass v. State*, 501 S.W.2d 643, 644 (Tex.Cr.App. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 873 (1974); and *Settles v. State*, 403 S.W.2d 417 (Tex.Cr.App.1966). The appellant's second ground is overruled.

In his fourth ground of error, the appellant claims that the trial court erred in failing to grant his motion to suppress, in which he claimed that all tangible evidence seized at the time of his arrest was the result of an illegal search and seizure, because any such evidence was obtained without probable cause. At the hearing, Officer Gilmore testified that on the day in question, the people who lived at 1505 Buchanan called about a disturbance in their front yard, and he responded to that call. When he arrived, the appellant was standing in the yard, arguing with a woman who was sitting on the porch, about "whether or not to go back home." Officer Gilmore stated that this was not the appellant's residence—the appellant lived on the 1500 block of Lincoln Street—but that he did not recall the names of the people who lived at 1505 Buchanan.

At one point, the officer testified, the woman walked away from 1505 Buchanan, and the appellant yelled after her in a voice that could be heard for some distance, "You better go ahead and leave, bitch." Officer Gilmore placed the appellant under arrest for disorderly conduct and charged him with "creating a disturbance for loud noise." He took the appellant to the police station, booked him into jail, and, while taking inventory of the appellant's personal property, he found a matchbox which contained the substance later identified as tetrahydrocannabinol.

The appellant argues that, under § 42.-01(a)(5), Tex.Penal Code Ann. (Vernon Supp.1981), the State must prove that the defendant made unreasonable noise in or near a private residence that he had no

reason to occupy. "At no time," the appellant states in his brief, "did the State offer any evidence to indicate that Appellant was on a private residence that he had no right to occupy." Therefore, according to the appellant, the State failed to show that the appellant had been legally placed under arrest, and the search of the appellant was made without probable cause.

 In order to obtain a conviction under § 42.01(a)(5) of the Penal Code, the State must prove that when the accused made unreasonable noise, he did so in or near a private residence that he had no right to occupy. In order to justify an arrest, the State need not prove these elements, but must show only that probable cause existed to make the arrest. In the present case, Officer Gilmore testified that the people who lived at 1505 Buchanan complained of a disturbance in their front yard. Upon arriving at 1505 Buchanan, the officer saw the appellant creating a disturbance. He had probable cause to believe the appellant was violating § 42.01(a)(5) of the Penal Code, whether or not the appellant was subsequently charged with the offense, and whether or not the State could ultimately present adequate proof of each element of the offense. The arrest was valid and, therefore, so was the search. *Irvin v. State*, 563 S.W.2d 920, 922–23 (Tex. Cr.App.1978) (en banc). The appellant's fourth ground of error is overruled.

██ In his third ground of error, the appellant contends that the trial court erred in revoking his probation because the evidence is insufficient to support the State's allegation that he possessed a controlled substance, namely, tetrahydrocannabinol, other than marihuana. First, he asserts that because the State failed to introduce in evidence a matchbox, or its contents, marked as State's exhibit number three, it failed to prove by a preponderance of the evidence that the "appellant had possessed a controlled substance, to-wit: tetrahydrocannabinol, other than marijuana." The appellant further claims that the State failed to prove that the substance he "allegedly possessed on the date in question was 'tetrahy-

drocannabinol, other than marijuana'." We disagree.

The record shows that on the day in question, Officer Gilmore placed the appellant under arrest for disorderly conduct and charged him with "creating a disturbance for loud noise." He took the appellant to the police station, booked him into jail, and, while taking inventory of the appellant's personal property, he found a matchbox which contained the substance later identified as tetrahydrocannabinol. At the trial the appellant testified that when he was booked into jail the officer told him to place everything in his pockets on the counter. The officer opened the matchbox and asked the appellant what was in the box. The appellant said he didn't know. The appellant did not deny having the matchbox or its contents on his person when arrested. However, he did claim to have no knowledge of the box being in his coat pocket. He claimed another person placed the matchbox in his coat pocket without his knowledge.

The State's chemist testified the matchbox contained two substances. The substances were marihuana seed and tetrahydrocannabinol. In response to questions from the District Attorney the chemist testified as follows:

Q. Did you have occasion to run any type of chemical tests upon that substance?

A. Yes. I examined both types of substances. There were some seeds, and there is some brown material. The brown material was the main thing I did the most tests on.

Q. And what type of tests did you do?

A. I examined it microscopically to see if I could see any remnants of a marijuana plant, and then I performed two chemical tests on it.

One test is known as the Modified Duquenois-Levine procedure, which is specific for cannabinoid compounds which are produced by the marijuana plant, and the other test was thin layer chromatography, which is specific—thin layer chromatography in conjunction with the use of a

specific dye, which is specific for several chemicals produced by the marijuana plant, among them tetrahydrocannabinol.

Q. What were the results of your tests?

A. That the brown material wrapped in the foil contained tetrahydrocannabinol.

Q. All right. And that's the contents of State's Exhibit No. 3, or at least part of the contents?

A. Part of the contents, yes.

Q. What were the results on the other contents?

A. I just examined those microscopically, and determined that they were— and formed the opinion therefrom that they were marijuana seeds.

Q. All right. Mr. Burgess, you have stated that the brown substance contains tetrahydrocannabinol. Is that what's commonly referred to as hashish?

A. Tetrahydrocannabinol is referred to on the street as THC. The materials of this type are materials that have this appearance and contain tetrahydrocannabinol are referred to as hashish, generally.

We acknowledge that possession of marihuana and possession of tetrahydrocannabinol other than marihuana are separate and distinct criminal offenses. *See Few v. State,* 588 S.W.2d 578 (Tex.Cr.App.1979). Tetrahydrocannabinol, commonly referred to as THC, is a chemical term for the resin secreted by the plant Cannobis Sativa L. and THC is that plant's key psychoactive ingredient. Marihuana is statutorily defined as the plant Cannabis Sativa L. or any of its derivatives. Article 4476–15, section 1.02(17), Tex.Rev.Civ.Stat.Ann. (Vernon 1976). If the resin, *i.e.* the THC, is extracted from the plant, those extracts are excluded from the definition of marihuana. *Id.* The extracts from the plant Cannabis Sativa L., *i.e.* marihuana, and the extracted derivative preparations, such as hashish, generally contain bigger concentrations of THC and are separately treated as tetrahydrocannabinol. *See Ex parte Psaroudis,* 508 S.W.2d 390 (Tex.Cr.App.1974).

In essence, the State's chemist testified that he examined the brown material to determine if it was the plant Cannabis Sativa L., *i.e.* marihuana, or a product of the plant, *i.e.* THC. From his examination, the chemist concluded that the material was tetrahydrocannabinol. Under these circumstances, we conclude that, although State's exhibit number three, *i.e.* the matchbox or its contents, were not introduced into evidence, the evidence is factually sufficient to show that on the day in question the appellant possessed the matchbox and its contents when arrested, and to justify the trial court's conclusion that the appellant possessed tetrahydrocannabinol other than marihuana. The appellant's third ground of error is overruled.

In summary, the appellant's four grounds of error are overruled and the trial court's order revoking his probation is affirmed.