William Anthony O'MARA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00410–CR.

Court of Appeals of Texas, San Antonio.

March 30, 1984.

Robert Spicer, San Antonio, for appellant.

Joe Mike Egan, Dist. Atty., Kerrville, for appellee.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

DIAL, Justice.

Appellant was convicted by a jury of the offense of possession of a controlled substance: tetrahydrocannabinol, other than marijuana. The court assessed punishment at three (3) years and a $450.00 fine. Imposition of sentence was suspended and appellant was placed on probation for three (3) years.

Appellant's first ground of error is the trial court erred in overruling his motion for instructed verdict because the evidence was insufficient to support a guilty verdict. Specifically, appellant claims the evidence was insufficient to show he possessed tetrahydrocannabinol as alleged in the indictment.

On September 24, 1980, at approximately 3:30 a.m., Deputy Sheriff Larry Findley drove to the Red Bluff Creek area in Bandera County in response to a disturbance call made by an unidentified caller. He arrived at a house described by the caller. Although there was a light on in the living room, he could not find anyone home.

Shortly thereafter, Findley met with Sheriff Pickett and Constable Ott. They parked their cars near the intersection of Highway 1283 and Red Bluff Road. They heard noises coming from an area of private property. The noises included the sounds of an engine starting and then being turned off and people conversing. After approximately thirty to forty minutes a pick-up truck left the private property and entered the intersection. At this time, the officers ordered the truck to stop and the passengers to exit the vehicle. Seated next to the passenger side window was James Rasmussen, seated next to him was appellant, then Kerry Hoskins and then the driver, Labeaume.

As the vehicle stopped, Findley observed a lot of activity in the truck. He specifically observed Rasmussen make a movement towards the floor or glove box area of the inside of the truck's cab.

Rasmussen exited the truck first from the passenger side wearing a shoulder hol-

ster. Appellant followed and had a .45 caliber pistol, containing six live rounds, in a belly holster, the butt visible. As the occupants exited from the truck they were ordered to place their hands above their heads. Appellant placed one hand up and with his other hand removed the pistol. At this Sheriff Pickett pinned appellant against the truck causing the gun to fall from appellant's hand onto the truck's hood. Appellant informed the officers he was just trying to surrender the gun.

Using a flashlight to look inside the truck, the officers observed a 9 mm Colt pistol on the floorboard. Rasmussen told the officers it was his pistol and he had placed it there. The officers also observed that the glove compartment door was open and lying on it was a baggie in plain view. Findley testified that he had police experience with narcotics and could identify marijuana. He believed that part of the substance in the baggie was marijuana.

Based upon the seating positions of the four occupants, Findley testified that the glove box was directly in front of Rasmussen. He also stated that while the glove box was within easy reach of appellant, it was probably within easy reach of all the occupants of the truck.

Findley testified that within broad guidelines there were certain symptoms commonly exhibited by persons using marijuana alone or in combination with tetrahydrocannabinol which is commonly referred to as hash. Hash is commonly used by being placed in marijuana cigarettes and pipes containing marijuana. Findley further testified that there was an odor of marijuana inside the pick-up truck. Findley stated that appellant exhibited some symptoms that were in common with someone under the influence of marijuana. Appellant was rude, his eyes were bloodshot and he was unsteady on his feet.

No attempt to take fingerprints from the baggie was made by the officers.

Dennis Ramsey, a chemist and toxicologist for the Texas Department of Public Safety, conducted a chemical analysis and microscopic analysis of the baggie's con-tents. He testified the baggie contained three exhibits: One was 14.55 grams of marijuana; the next was two marijuana cigarettes containing 0.92 grams of marijuana; and the third exhibit was 0.74 grams of a solid brown substance which contained tetrahydrocannabinol. Ramsey stated that the tetrahydrocannabinol was definitely a usable amount. He did not consider it to be a small amount. He reiterated that the tetrahydrocannabinol was in the bag along with the marijuana.

The State and appellant stipulated into evidence that the pick-up truck was not registered to appellant.

Recently, the Court of Criminal Appeals has stated that the standard of review in both direct and circumstantial evidence cases is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt; and in applying this standard of review the evidence will be viewed in the light most favorable to the verdict or judgment. *Houston v. State*, 663 S.W.2d 455 (Tex.Cr. App.1984) (Opinion denying appellant's motion for rehearing on p.d.r.).

In *Pollan v. State*, 612 S.W.2d 594, 596 (Tex.Cr.App.1981) the Court held:

In order to establish the unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Dubry v. State*, Tex.Cr.App., 582 S.W.2d 841. It is not necessary to prove that the accused had exclusive possession of the narcotics in question. *Damron v. State*, Tex.Cr. App., 570 S.W.2d 933. When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Wiersing v. State*, Tex.Cr.App., 571 S.W.2d 188.

■ Among such additional facts and circumstances which can establish the affirmative link are: the marijuana was in open or plain view, *Hernandez v. State*, 538 S.W.2d 127 (Tex.Cr.App.1976); the place where the contraband was found was enclosed, *Mendoza v. State*, 583 S.W.2d 396 (Tex.Cr.App.1979); there was an odor of marijuana emanating from the vehicle, *Duff v. State*, 546 S.W.2d 283 (Tex.Cr.App. 1977) and *Aldridge v. State*, 482 S.W.2d 171 (Tex.Cr.App.1972); the contraband was easily accessible to the accused, *Hahn v. State*, 502 S.W.2d 724 (Tex.Cr.App.1973); and the accused appears to be under the influence of narcotics at the time of arrest, *Powell v. State*, 502 S.W.2d 705 (Tex.Cr. App.1973).

In the charge, the court instructed the jury on the law of parties and included instructions on the State's burden of proof in possession cases in language almost identical to that found in *Pollan v. State*, *supra*, as previously quoted herein.

■ In the instant cause, the marijuana and tetrahydrocannabinol were in one clear baggie and in open view. The baggie was easily accessible to appellant and inside the closed confines of the truck cab. There was an odor of marijuana inside the truck. Appellant exhibited symptoms that were similar to those that were common with someone under the influence of marijuana. When viewed in the light most favorable to the verdict, we believe that a rational trier of fact could have found the essential elements of the crime beyond a reasonably doubt. The evidence is sufficient to sustain the verdict and the trial court properly overruled appellant's motion for instructed verdict. Appellant's first ground of error is overruled.

In his second ground of error, appellant alleges that the State failed to prove that the baggie's contents included tetrahydrocannabinol other than marijuana.

As noted previously herein, the chemist testified that the baggie contained three distinct exhibits: loose marijuana, two marijuana cigarettes, and third, a solid brown substance which contained tetrahydrocannabinol. When asked on cross-examination if the tetrahydrocannabinol was inside the bag by itself when presented to him, the chemist responded that it was in the bag, "[a]llong with the marijuana."

■ The contention raised by appellant herein is similar to that raised by the defendant in *Johnson v. State*, 633 S.W.2d 687 (Tex.App.—Amarillo 1982, pet. ref'd). In *Johnson*, the chemist testified that the matchbox he examined contained two substances. Upon his testing he found one substance to be marijuana seeds and the other, a brown substance, contained tetrahydrocannabinol. The court found the evidence sufficient to show that the brown material contained tetrahydrocannabinol other than marijuana. Similar to the result reached in *Johnson*, we find that the testimony that the baggie contained three exhibits, two of which were marijuana and the other tetrahydrocannabinol, coupled with the chemist's response that the tetrahydrocannabinol was in the bag along with the marijuana, sufficient to show that the brown substance contained tetrahydrocannabinol other than marijuana. Appellant's second ground of error is overruled.

The judgment of the trial court is affirmed.

CADENA, Chief Justice, dissenting.

The evidence in this case is so flimsy and insignificant that it does no more than raise a suspicion that appellant was in possession of tetrahydrocannabinol (THC), a controlled substance other than marijuana.

There is no evidence that the truck in question belonged to appellant. In fact, the State stipulated that it was not registered to him. At the time the officers stopped the truck, there were four persons in the front seat. On the extreme right, next to the window on the passenger side and directly in front of the glove compartment, was James Rasmussen. Next to him

was appellant, while Kerry Hoskins sat to appellant's left, next to the driver.[1]

It is true that Officer Findley testified that as the truck came to a stop there was a "lot of activity" in the cab of the truck. However, he testified that he could not see appellant or Hoskins, and it is clear that he observed no movement by appellant. He saw Rasmussen's move toward the glove compartment and move "for the floor." Rasmussen's weapon was·found on the floor of the truck, and Rasmussen told Findley that he (Rasmussen) had placed the gun there.

After finding the gun on the floor, the officer continued his search. He saw that the glove compartment was open, and noted that it was "too full" so that Rasmussen's gun would not have fit in the glove compartment. The baggie containing the contraband was "kind of cross ways," so that part of it was inside the glove compartment and part of it was on the door. Findley, because of his training at the police academy and other extensive training while he was doing undercover work in the area of illegal drugs was able to identify most controlled substances. He testified that the bag contained marihuana. He made no effort to identify the brown substance and testified that THC could be identified only through chemical analysis.

When asked whether the "open glove compartment would have been within easy reach of the defendant," the officer replied, "Yes, sir. Anyone in the pickup, yes, sir."

Clearly, appellant was not in exclusive possession of the place where the THC was found and, in fact, the record establishes that it was no more accessible to appellant than to any other occupant of the truck. As the majority opinion points out, under such circumstances it cannot be concluded that he had knowledge of and control over the contraband in the absence of additional and independent facts and circumstances which affirmatively link the accused to the contraband.

The independent facts and circumstances relied on by the majority are: (1) the marihuana was in open or plain view; (2) the place where the contraband was found was in an enclosed space, i.e., the cab of the truck; (3) the smell of marihuana emanated from the vehicle; (4) the contraband was easily accessible to the appellant; and (5) appellant appeared to be under the influence of marihuana.

An examination of such independent circumstances, and the authorities relied on by the majority in concluding that they are sufficient to link appellant to the THC should be examined.

(1) *Open and plain view.* The evidence establishes that the baggie was in plain view as far as the officer was concerned after the vehicle had stopped, the occupants had alighted and the glove compartment door was open. There is no evidence that the glove compartment door was open prior to the time that the truck stopped so that appellant could have seen the baggie or otherwise had knowledge of its presence in the vehicle. In fact, the evidence strongly suggests, as the officer indicated, that Rasmussen had opened the glove compartment after the vehicle had come to a stop. The evidence establishes that the baggie contained 14.55 grams of marihuana (about a half-ounce), two cigarettes containing .92 grams of marihuana, and .74 grams of a brown substance which chemical analysis indicated contained an unspecified amount of THC. There is no evidence suggesting that the substance containing the THC was in plain view to one glancing at the baggie.

In support of its "plain view" theory the majority relies on *Hernandez v. State,* 538 S.W.2d 127 (Tex.Cr.App.1976). In that case the court, in addition to pointing out that the marihuana was in plain view on the floor of the car in close proximity to the defendant, added that "roaches" were found in the ashtray and in a matchbox on the dashboard; the car in question belonged to defendant's uncle; and defendant

---

1. Miss Hoskins and appellant were tried together. Although the evidence as to both was the same, Miss Hoskins was found not guilty.

was driving the vehicle at the time of the arrest. The Court of Criminal Appeals said that the case was a close one, but that it strained credulity to suggest that the defendant, even at night, was unable to see the roaches on the dashboard. The opinion does not suggest how the roaches in the matchbox on the dashboard became visible to the defendant.

In any event, in *Hernandez* defendant was charged with possession of marihuana, and it was that very substance, marihuana, which was in plain view. In the case before us, the fact that marihuana might have been in plain view is no evidence that the THC, the substance which appellant is charged with possessing, was in plain view. Even if we assume that marihuana in plain view suggests that a defendant exercised care, control and management over the marihuana, it cannot be suggested that the presence of marihuana in plain view suggests care, control and management of THC and that appellant knew the substance, which the police officer could not identify, was THC. Proof of possession of marihuana falls somewhat short of proof of possession of THC, a substance "other than marihuana."

(2) *Contraband found in enclosed place.* In *Mendoza v. State,* 583 S.W.2d 396 (Tex.Cr.App.1979), the heroin in question was found behind a chest of drawers in a closet in appellant's house where he had been living with his wife and children for several months. Appellant's clothes were found in the closet as were $1,800.00 and a can of lactose. Appellant claimed the money and lactose as his property. 583 S.W.2d at 397. The court did not stress the fact that the heroin had been found in an enclosed place and noted that the heroin was found in the closet where appellant kept his clothes as were the tinfoil, the plastic bags and the lactose, a substance which is used to cut heroin. These circumstances, together with the fact that the defendant gave the officers consent to search the house were clearly sufficient to support a finding of possession by defendant.

The "enclosed place" test would be satisfied in every case, except in those cases where the contraband is found on the street, sidewalk or a yard which is not "enclosed" by a fence.

(3) *Smell of marihuana.* In *Duff v. State,* 546 S.W.2d 283 (Tex.Cr.App.1977) the independent facts deem sufficient were (1) conflicting statements concerning the length of time that defendant's passenger had been in the car; (2) evidence that a strong odor of marihuana emanated from the vehicle; and (3) marihuana seeds "scattered all over the front floorboard." 546 S.W.2d at 287. The evidence also established that a search of defendant revealed a pipe containing marihuana residue. The court, with two dissents, held that the evidence was sufficient to sustain a conviction for possession of *marihuana.*

The odor of marihuana emanating from a vehicle may be regarded as some evidence of the presence of marihuana in the vehicle and may, perhaps be evidence that a passenger in the car who is familiar with the smell of marihuana must have known of the presence of marihuana in the vehicle at that time or a short time before. But the conclusion that the smell of marihuana is evidence that one of several persons in the vehicle exercised care, control and management over the marihuana is at best, extremely far-fetched. Such evidence furnishes no basis whatever for the conclusion that the occupant of the car exercised care, control and management of a controlled substance "other than marihuana" with knowledge that it was THC. In fact, direct proof of possession of marihuana is not proof of possession of some other substance.

(4) *Contraband easily accessible.* One of the factors mentioned in *Hahn v. State,* 502 S.W.2d 724 (Tex.Cr.App.1973), was that the marihuana was readily accessible to the defendant. However, there were other circumstances supporting the finding of possession by defendant. Defendant, a member of the United States Marines on leave, had borrowed the car which he was driving from a friend in South Carolina to drive to

his home in Odessa, Texas. He had picked up two hitchhikers who were in the car at the time defendant was stopped for speeding and the marihuana was found. In the console between the front bucket seats the officers found a pipe of the type used for smoking marihuana. The pipe contained marihuana residue. Defendant picked up the pipe. When defendant, a Marine on leave, was asked to prove his authority to use the out-of-state automobile which was registered to another person, he opened the console to produce the written authority from the owner. The officers saw a bayonet in a scabbard riveted to the dashboard to the right of the steering column and a knife which was sticking out from under the driver's seat. When the officer pulled out the knife, a plastic bag containing about 20 grams of marihuana came out also. In a written statement, defendant stated that the two passengers had no knowledge of the contents of the car.

In *Hahn,* then, defendant had the care, control and management of the vehicle in which the marihuana was found. The other persons in the car had no knowledge of the presence of marihuana. Since defendant obtained his written authorization to operate the vehicle from the console in which the pipe was found, this was evidence that he was familiar with the contents of the console.

(5) *Defendant under influence of marijuana.* In *Powell v. State,* 502 S.W.2d 705 (Tex.Cr.App.1973) there was evidence that defendant was under the influence of narcotics. However, even a casual reading of the evidence in that case reveals the presence of other overwhelming evidence of guilt, including the fact that marihuana was found on the person of the defendant.

In this case Officer Findley testified that because of his long experience he had observed many persons under the influence of drugs and was familiar with the manner in which they acted. He testified, however, that not all persons respond the same way to marihuana, so that "there is no particular standard, where you say a person takes a marihuana cigarette they're gonna react in a certain way." A person under the influence of marihuana, he said, generally has a lackadaisical, comfortable or "easy" manner. His eyes are often red and sometimes "runny." He said that there is no difference between the effects of marihuana and alcohol "other than the odor," and that any beverage which contains alcohol has a certain odor.

The officer testified that at the time of the arrest Kerry Hoskins had red eyes and was somewhat belligerent and confused, but that after about an hour she was polite and easy to get along with. He said he could not testify that she was under the influence of any drug. He concluded by saying that some of the "symptoms" exhibited by Kerry Hoskins were the same as those "exhibited" by some smokers of marihuana.

When speaking of appellant, Findley repeated that some of the symptoms displayed by him were the same as the symptoms displayed by some people under the influence of marihuana. Appellant's eyes were bloodshot, he was somewhat unsteady on his feet and he was somewhat belligerent, or rude.

Findley testified that he "didn't get that close to anybody" to determine whether there was any odor of marihuana on or about their persons.

The evidence, at best, is extremely weak, particularly in view of the fact that the officer did not say that, in his opinion, appellant was under the influence of marihuana. The odor of marihuana smoke and marihuana, according to Findley, cannot be distinguished, and no cigarette butts were found in the car.

According to the majority theory, if I am sitting at a kitchen table with some friends in a house which is not mine and there is a pot of chili on the stove which emits the odor of chili, bowls which show unmistakable evidence that chili has been consumed and there are chili spots on my shirt, these circumstances are enough to prove, beyond a reasonable doubt, that I exercised care, management and control over the pot of chili. The chili was in plain view, it was

found in an enclosed place (the house or, perhaps, a pot with a lid on it), it is easily accessible to me, the odor of chili is present, and there is evidence that I partook of the chili.

In any event, the majority opinion overlooks the fact that appellant was not charged with possession of marihuana. He was charged with possession of THC, a substance other than marihuana.

In every case relied on by the majority there was strong, almost overwhelming evidence, of the possession of contraband by defendant other than the five "independent" facts and circumstances.

In *Hernandez* defendant was in control of the vehicle, which belonged to his uncle, and the evidence of contraband was on the dashboard in front of defendant, who was driving. Although the conviction was affirmed, the Court described the case as a "close one" and was impressed by the fact that it strained credulity to suggest that defendant was unable to see the objects on the dashboard. 538 S.W.2d at 131. In the case before us it does not tax credulity to conclude that appellant did not see the bag which, for all the evidence suggests, was in a glove compartment which was not open until the vehicle had been stopped by the officers.[2]

In *Mendoza*, the contraband was found in defendant's house and he himself exhibited some degree of control and management of the premises by consenting to the search. The heroin was found in a closet which was obviously defendant's closet, next to a can of lactose and trousers containing money, both items claimed by defendant as his property.

In *Duff*, in addition to the smell of marihuana, marihuana was scattered "all over the front floor board"; defendant was operating the vehicle, and, not insignificantly, a search of defendant's person produced a pipe containing marihuana residue. Even if we ignore the odor of marihuana factor,

the other evidence clearly points to possession by defendant.

In *Hahn*, the vehicle was in the care, custody and control of defendant; there was evidence that the marihuana did not belong to any of the passengers; defendant picked up the pipe containing marihuana which was in the console; and the evidence showed that defendant was familiar with the contents of the console.

In *Powell*, there was strong evidence that defendant had helped transfer the marihuana from an airplane to the truck in which defendant was a passenger and marihuana was found on defendant's person.

The most charitable view of the State's evidence in this case is that it raises a surmise that appellant was in possession of marihuana. Appellant was not charged with that offense.

---

2. The officer who searched the cab with the aid of a flashlight did not immediately discover the presence of the "baggie" which, supposedly was in plain view. The record discloses that the

stop of the truck took place at about 4:30 a.m. The officer testified that the light inside the cab was not on, and that he used a flashlight so he could see.