# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00328-CR

---

**Terrance Odel Cruder, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM COUNTY COURT AT LAW NO. 3 OF WILLIAMSON COUNTY
NO. 23-01706-3, THE HONORABLE DOUG ARNOLD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Terrance Odel Cruder, Jr., was convicted of driving while intoxicated (DWI) and sentenced to three days' confinement in county jail. *See* Tex. Penal Code §§ 12.22, 49.04. On appeal, Cruder challenges the sufficiency of the evidence supporting his conviction and asserts that the trial court erred when it assessed costs. We will affirm the trial court's judgment of conviction.

## BACKGROUND

On March 19, 2023, Cruder spent the day at the Kalahari Resort in Round Rock, Texas. After leaving the resort, he drove to a nearby convenience store around midnight. While Cruder was in the store with two companions, a corporate employee monitoring the store through surveillance cameras called 911 to report that there were customers inside the store who were upset after being told that they could not buy alcohol at the store because one of the customers

did not have identification. The caller reported that the customers were yelling at one of the store's employees and had surrounded her. The caller described one of the individuals as wearing a black jacket and red sweatpants. Police officers quickly responded to the call.

When the first officer arrived, the officer approached the car and spoke with the driver, who was later identified as Cruder. Other officers approached and found the car pulled halfway out of a parking spot. One officer explained to Cruder that there had been a call about a disturbance inside the store and that there was a smell of marijuana coming from the car. One of the officers commented that Cruder's eyes looked glassy and red and that he appeared to have a film on his tongue. During his interaction with the police, Cruder alternated between being conversational and argumentative. The officers asked for permission to search the car because of the marijuana smell, but Cruder denied that request. The officers then explained that they had called for a K-9 unit to perform an open-air search around the car. When the officers asked Cruder to get out of the car, Cruder refused. The K-9 unit responded quickly, and the dog provided a positive alert for drugs inside the car.

The officers told Cruder to place the car in park, and Cruder informed the officers that he had turned the car off. The officers directed Cruder and the two passengers to get out of the car. Initially Cruder, who was wearing a black jacket and red pants, complied, but he subsequently got back into his car. After Cruder got out a second time, the officers placed handcuffs on him, and Officer Miguel Estrada moved him to the backseat of a patrol car. Although Officer Estrada stated that he could smell alcohol on Cruder's breath, Cruder told the officer that he had not been drinking. In response to questions by Officer Estrada, Cruder told the officer that he had head trauma from a prior car accident that caused him dizziness and forced him to strain to see, that he was in therapy for the injury, and that he had high blood

2

pressure from time to time. Cruder also explained that he was "ok" at the moment, did not need medical attention, and did not take medicine for his blood pressure. Officer Estrada directed the other officers to turn off the emergency lights so that he could perform a horizontal gaze nystagmus (HGN) test. After Officer Estrada performed the test, he told Cruder that Cruder had displayed cues of intoxication. Cruder told the officer, "oh, you're going to have me do a whole bunch of tests[]," and Officer Estrada explained that he was not going to ask Cruder to perform any more sobriety tests because of Cruder's demeanor. Officer Estrada told Cruder that he had a portable breath machine in his car, but Cruder responded that he did not see a reason for additional testing. At that point, Officer Estrada informed Cruder that he was under arrest for DWI. Another officer transported Cruder to jail.

While Cruder was taken to jail, Officer Estrada applied for and obtained a search warrant to collect a sample of Cruder's blood. At the jail, Cruder argued with the officers and informed them that he was not going to submit to a blood draw even though there was a search warrant. The officers then placed restraints on Cruder, and an officer obtained a sample of Cruder's blood for alcohol testing.

After his arrest, Cruder was charged with DWI, and he expressed his desire to have a bench trial and waive his right to a jury. Before the trial started, the State requested a continuance due to the unavailability of the witness who would be testifying about the blood-alcohol testing performed in this case, but the trial court denied the State's request. At trial, the only witness was Officer Estrada. In addition, the following exhibits were admitted and played for the trial court: a copy of the 911 call and recordings from Officer Estrada's body camera showing the events leading up to Cruder's arrest and the blood draw.

3

In his testimony, Officer Estrada explained that he had received additional training to serve on the DWI enforcement team. Further, Officer Estrada testified that when he arrived, Cruder's car was on and was "reversing" or "attempting to reverse." Officer Estrada related that one of the other officers told Cruder to place the car in park. Officer Estrada testified that the store employee confirmed that Cruder and the two passengers caused the disturbance in the store.

Officer Estrada described Cruder as arguing with the police and as being repetitive, and Officer Estrada recalled that Cruder would fluctuate from being uncooperative and unable to properly respond to the officers' questions to being calm and responsive. Additionally, Officer Estrada remembered that these changes in behavior lasted for several minutes. Further, Officer Estrada explained that Cruder had glassy and watery eyes, that Cruder had a strong smell of alcohol on his breath, and that there was a marijuana smell on the driver's side of the car. In his testimony, Officer Estrada related that another officer said that Cruder's tongue had a film on it, had a blue tint, and had raised taste buds and that the officer described the appearance of Cruder's tongue as consistent with recent marijuana use.

Moreover, Officer Estrada explained that although Cruder initially refused to get out of the car, Cruder eventually got out and was placed in handcuffs. Cruder told Officer Estrada that he had not consumed any alcohol, but Cruder did admit to being at a resort all day. Officer Estrada testified that the resort serves alcoholic beverages. Although Officer Estrada wanted to perform field-sobriety testing on Cruder, he was concerned about officer safety due to Cruder's prior behavior and did not want to remove the handcuffs from Cruder. For that reason, Officer Estrada only performed the HGN test, but Officer Estrada clarified that HGN tests are the most reliable field-sobriety tests because they detect involuntary jerking movements of the eyes

4

due to alcohol use. When describing the HGN testing performed in this case, Officer Estrada recalled that Cruder's pupils were equal in size and were able to track together, and Officer Estrada testified that this indicated that Cruder was not suffering symptoms from a head trauma. Further, Officer Estrada explained that Cruder displayed all six cues of intoxication. Next, Officer Estrada related that Cruder refused to submit to a breathalyzer test. Additionally, Officer Estrada testified that another officer later asked Cruder to provide a sample of his breath for testing but that Cruder refused. Officer Estrada recalled that he arrested Cruder after concluding based on his observations and investigation that Cruder could not have driven safely that night because his mental and physical faculties were compromised due to the consumption of alcohol. Moreover, Officer Estrada related that a search of Cruder's car following his arrest resulted in the discovery of marijuana inside the car where Cruder had been sitting.

In his cross-examination, Officer Estrada admitted that there had been no 911 calls regarding any erratic driving by Cruder or his having committed any traffic violation. Officer Estrada also agreed that although Cruder had been aggressive in his tone, he had not been physically aggressive. Officer Estrada agreed that he was not able to evaluate whether Cruder was unsteady on his feet, that Cruder did not fall when getting out of the car, that Cruder did not display any loss of balance while walking from his car to the back of the police car, and that Cruder's eyes were not bloodshot; however, Officer Estrada explained that officers assisted Cruder while he was walking to the police car.

After considering the evidence presented at trial, the trial court found Cruder guilty of DWI. Cruder appeals his conviction.

5

**DISCUSSION**

In his first issue on appeal, Cruder argues that the evidence was insufficient to support his conviction for DWI. In his second issue, he asserts that the trial court erred by assessing costs against him.

**Sufficiency of the Evidence**

When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In making this determination, "[w]e . . . consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. The fact finder "is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* The fact finder "can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the" fact finder "resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) (quoting *Murray v. State*, 457 S.W.3d 446, 448-49 (Tex. Crim. App. 2015)). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320).

As set out above, Cruder was convicted of the offense of DWI. Under the Penal Code, an individual commits that offense if he "is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code § 49.04(a). An individual is intoxicated if he does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body."[1] *Id.* § 49.01(2).

When presenting his sufficiency challenge, Cruder limits his arguments to the sufficiency of the evidence regarding whether he was intoxicated and does not challenge the other elements of the DWI offense. *See* Tex. R. App. P. 47.1; *see also Jeanty v. State*, No. 02-21-00159-CR, 2023 WL 3114342, at *7 n.8 (Tex. App.—Fort Worth Apr. 27, 2023, pet. ref'd) (mem. op., not designated for publication) (limiting sufficiency analysis to elements challenged).

---

[1] The Penal Code also specifies that an individual is intoxicated if he has "an alcohol concentration of 0.08 or more." Tex. Penal Code § 49.01(2). However, no evidence concerning Cruder's blood-alcohol level was introduced.

7

In his first set of arguments, Cruder contends that the trial court informed the parties that it based its guilty verdict entirely on the video of the blood draw. Further, Cruder argues that this video was taken approximately one and a half to two hours after he was arrested. Given the lapse in time, Cruder asserts that the evidence pertaining to his being intoxicated at the time of the blood draw could not be sufficient to support a determination that he was intoxicated at the time that he drove in the absence of retrograde extrapolation evidence establishing his intoxication at the time of the alleged offense. Moreover, Cruder suggests that no evidence was presented regarding factors he believes would have been crucial to establishing his intoxication at the time of the offense through retrograde extrapolation, including when he last ate, how much he weighed, when his last drink was consumed, and whether he was in the absorption or elimination phase. Cruder urges that without this type of information, evidence indicating that he was intoxicated at the time of the blood draw could not provide a sufficient basis for his conviction.

As an initial matter, we cannot agree with Cruder's suggestion that the trial court based its verdict entirely on the video of the events surrounding the blood draw. Although the trial court did ask for that video to be played again and stated it was "focused on" the video at that time, it did not state that the video was the only evidence it considered when reaching its verdict. Moreover, in determining whether the evidence was sufficient to support the conviction, appellate courts review all the evidence from trial to determine whether any trier of fact could have found the elements of the offense beyond a reasonable doubt. *Stahmann*, 602 S.W.3d at 577. Further, nothing in the DWI statutory framework specifically mandates extrapolation evidence. *See* Tex. Penal Code §§ 49.01-.12. Additionally, as our sister court of appeals has explained, evidence of events occurring following a similar passage of time is relevant in

8

DWI cases despite the absence of retrograde extrapolation testimony. *See State v. Mechler*, 123 S.W.3d 449, 452-53 (Tex. App.—Houston [14th Dist.] 2003) (concerning one and half hour break between arrest and blood draw), *aff'd*, 153 S.W.3d 435 (Tex. Crim. App. 2005); *see also Howard v. State*, 230 S.W.2d 213, 213 (Tex. Crim. App. 1950) (observations of defendant made by police officer three hours after defendant's arrest were admissible to corroborate other witness's testimony that defendant was drunk at time of arrest). Moreover, as set out below, we believe that the evidence presented at trial would have allowed a reasonable fact finder to conclude that Cruder was intoxicated at the time that he drove his car.

An employee who worked for the corporation that owned the convenience store that Cruder drove to called 911 to report a disturbance. The caller stated that three individuals—including one wearing a black jacket and red pants, matching Cruder's attire that night—were yelling at a store employee. According to the caller, the individuals caused a disturbance after the store employee refused to sell them alcohol, and they had surrounded the employee. *Cf. Brister v. State*, 414 S.W.3d 336, 341 (Tex. App.—Beaumont 2013, pet. ref'd) (noting that evidence of defendant "acting in a belligerent manner" supported conclusion that defendant was intoxicated). When the police officers arrived at the store, the employee confirmed that Cruder and the passengers were the individuals who caused the disturbance.

The video from Officer Estrada's body camera captured how Cruder was combative with the police, and Officer Estrada testified that Cruder fluctuated from being uncooperative to being calm throughout his interaction with the police. *See Reagan v. State*, 968 S.W.2d 571, 574 (Tex. App.—Texarkana 1998, pet. ref'd) ("The demeanor of a defendant upon being confronted by a peace officer . . . may provide some evidence of his intoxication"); *see also Gutierrez v. State*, 419 S.W.3d 547, 551 (Tex. App.—San Antonio 2013, no pet.)

9

(noting that argumentative behavior can indicate intoxication). When describing Cruder, Officer Estrada related that Cruder had a strong odor of alcohol on his breath and had glassy and watery eyes. Although Officer Estrada did not remember Cruder's eyes being bloodshot, the recording from his body camera captured one of the other officers stating that Cruder's eyes were red. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (including "odor of alcohol on the breath" and "bloodshot eyes" in list of "evidence of intoxication").

Additionally, Officer Estrada recalled that there was a strong odor of marijuana on the driver's side of the car; that marijuana was found in the car where Cruder had been sitting; and that another officer told him that the appearance of Cruder's tongue was consistent with recent marijuana use, including the presence of a film, a blue tint, and raised taste buds. *See O'Mara v. State*, 669 S.W.2d 405, 407, 408 (Tex. App.—San Antonio 1984, no pet.) (overruling sufficiency challenge and noting that defendant exhibited symptoms common for individuals who have used marijuana, including being rude and having bloodshot eyes); *see also Wickware v. State*, No. 12-03-00125-CR, 2004 WL 1486326, at *2, *4 (Tex. App.—Tyler June 30, 2004, no pet.) (mem. op., not designated for publication) (overruling sufficiency challenge to DWI conviction in part due to testimony that marijuana use can cause taste buds on back of tongue to raise up and that defendant's tongue had raised taste buds).

Further, Officer Estrada testified that Cruder exhibited all six indicators of intoxication on the HGN test and described the test as one of the most reliable field-sobriety tests. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (noting that failing field-sobriety test is indicator of intoxication). Although Cruder informed Officer Estrada before taking the test that he previously sustained a head injury and had occasional blood-pressure issues, Cruder also stated that he did not need medical treatment, felt "ok," and was not taking

10

any medication, and Officer Estrada testified that Cruder's pupils were the same size and that his eyes were able to track, which he explained was an indication that any potential previous head injury would not have affected the results. Moreover, the trial court was tasked with evaluating what weight to give Cruder's statements to the officer. *See Stahmann*, 602 S.W.3d at 577; *see also Perales v. State*, 622 S.W.3d 575, 582 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (explaining that factfinder "was free to disregard appellant's self-serving" statement).

While talking with Officer Estrada, Cruder expressed displeasure with the idea of doing additional field-sobriety tests. *See Maxwell v. State*, 253 S.W.3d 309, 317 (Tex. App.—Fort Worth 2008, pet. ref'd) (noting in sufficiency review that evidence supporting conviction included that defendant "refused to perform field sobriety tests"). Similarly, Cruder informed Officer Estrada that Cruder did not see the need to submit to a breathalyzer. Officer Estrada also testified that another officer later asked Cruder to provide a breath sample but that Cruder again refused. At the jail, Cruder later refused to submit to a blood draw, resulting in the officers' having to restrain him.[2] *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (recognizing that defendant's refusal to submit to breath test is relevant to showing his consciousness of guilt); *see also* Tex. Transp. Code § 724.061 ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial").

---

[2] In his brief, Cruder asserts that he was "not clearly offered a breath test" on the video. However, a fact finder could reasonably infer from Cruder's response to Officer Estrada's mentioning that there was a portable breathalyzer on scene that Cruder was refusing to provide a sample of his breath. *See Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). As set out earlier, Officer Estrada testified that Cruder refused both his request and another officer's later request for Cruder to submit a breath sample, and Cruder later refused to cooperate and allow the officers to take a sample of his blood even though they had a warrant.

11

Additionally, after explaining that he received additional training to serve on the DWI enforcement team, Officer Estrada testified that Cruder's behavior and other factors indicated that his physical and mental faculties had been compromised. *See Zill v. State*, 355 S.W.3d 778, 785-86 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("The testimony of a police officer regarding the defendant's behavior and the officer's opinion that the defendant is intoxicated provides sufficient support to uphold a . . . verdict").

In the remainder of his brief on this issue, Cruder attacks the sufficiency of some of the evidence summarized above for various reasons. First, Cruder argues that the evidence concerning his refusal to cooperate with the police and provide samples for testing cannot be considered as evidence of his guilt. Although Cruder correctly points out that cases have held that a refusal to consent to a search cannot be considered when determining if there was reasonable suspicion to support a search, *see Lall v. State*, 686 S.W.3d 766, 768 (Tex. Crim. App. 2024), a fact finder may consider as evidence of guilt a refusal to provide a sample for blood-alcohol testing, *see Bartlett*, 270 S.W.3d at 153.

Next, Cruder acknowledges that the HGN test was performed, but he seems to challenge the validity of the science supporting its use as an indicator of intoxication. However, he did not make any objection to the validity of the test at trial, and therefore, did not preserve that type of claim for appeal. *See* Tex. R. App. P. 33.1(a) (setting out procedure for preserving issues for appellate consideration); *see also Stewart v. State*, 995 S.W.2d 251, 258 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (noting that defendant can fail to preserve objection to admission of scientific evidence). And appellate courts consider all of the admitted evidence when performing a sufficiency review regardless of whether it was correctly admitted. *See Stahmann*, 602 S.W.3d at 577.

12

Further, Cruder contends that the circumstances under which the HGN test were performed might have resulted in a false positive because of his high blood pressure, head injury, and vision problems and because of the presence of distracting lights. However, as set out above, the trial court was tasked with deciding what if any weight to give the evidence concerning his health issues. *See id.* Moreover, the recording from Officer Estrada's body camera captured him telling the other officers to turn off their emergency lights before Officer Estrada administered the HGN test.

Next, Cruder argues that the recording from Officer Estrada's body camera captured indisputable evidence showing that he was not intoxicated. For example, Cruder contends that the recording contradicts Officer Estrada's testimony that he smelled alcohol on Cruder's breath. Instead, Cruder claims that another officer—the supervising officer—mentioned smelling *marijuana* but did not mention alcohol "until he [wa]s prompted to do so" later. However, Officer Estrada did mention on the recording smelling alcohol on Cruder's breath multiple times. And it was for the trial court to weigh the evidence presented at trial and resolve conflicts in it. *See id.*

Cruder also claims that the recording established that his eyes were not bloodshot or glassy and that he did not fail the HGN test because his eyes smoothly followed the pen. Although the recording does capture the HGN test's being performed, the recording only captures one side of Cruder's face during the testing, and Officer Estrada's arm obscures the view of the visible eye for much of the test. Even though the body camera recorded Cruder's eyes at various points on the video, the depiction was not so clear and close that we would be able to definitively determine that his eyes were neither bloodshot nor glassy. Under these circumstances, we cannot agree with Cruder's suggestion that the recording indisputably

13

contradicts the testimony at trial. *See Byrd v. State*, No. 01-20-00108-CR, 2022 WL 287709, at *2, *4 (Tex. App.—Houston [1st Dist.] Feb. 1, 2022, pet. ref'd) (mem. op., not designated for publication) (disagreeing with defendant's assertion that video indisputably showed that officer could not have seen traffic infraction).

Finally, Cruder argues that there were crucial pieces of evidence absent from this case that other courts have relied on when determining that the evidence was sufficient to support a conclusion that a defendant was intoxicated. For example, Cruder contends that he never admitted to drinking, that he did not provide inconsistent versions of the events leading up to his arrest, that his ability to speak was not impaired, that he was not vomiting, that there was no alcohol in his car, that no field sobriety tests other than the HGN were performed, that there was no evidence of his driving erratically, and that there was no evidence that he was unsteady on his feet.

To the extent that Cruder is faulting the investigation in this case and contending that additional evidence should have been presented to properly convict him, an appellate court's role in conducting a sufficiency review is not to consider what additional evidence might have been gathered through a more thorough investigation but to consider the evidence that was presented at trial and decide whether that evidence was sufficient to support the conviction. *See Murray*, 457 S.W.3d at 449 (explaining that appellate courts should not focus on evidence that was "missing" compared to evidence in other cases and instead should determine whether evidence that was admitted would allow any rational fact finder to convict); *Merritt*, 368 S.W.3d at 526 (noting that appellate court improperly conducted sufficiency review by using "a 'divide-and-conquer' approach, separating each piece of evidence offered to support Appellant's conviction," and speculating "on the evidence [the] State did not present").

14

Although Cruder contends that additional or different evidence was needed to properly support his conviction, we conclude, given our standard of review and the inferences that the trial court was free to make from the evidence, that the evidence presented and summarized above was sufficient to establish that he was intoxicated at the time he operated his car. *See* Tex. Penal Code §§ 49.01, .04; *see also Sandvig v. State*, No. 03-04-00345-CR, 2006 WL 431379, at *2-3 (Tex. App.—Austin Feb. 24, 2006, pet. dism'd, untimely filed) (mem. op., not designated for publication) (overruling sufficiency challenge and affirming DWI conviction without evidence of blood-alcohol level). Accordingly, we overrule Cruder's first issue on appeal.

**Court Costs**

In his second issue, Cruder asserts that the trial court erred by assessing costs against him. When presenting this issue, Cruder argues that the trial court determined multiple times that he was indigent and acted consistently with those determinations by appointing him an attorney for trial, waiving the traffic fine at trial after concluding that Cruder's financial situation had not improved, *see* Tex. Transp. Code § 709.001 (requiring imposition of $3,000 fine), appointing him an attorney for his appeal, and signing an order allowing him to obtain a free clerk's record and reporter's record. Tex. Code Crim. Proc. art. 26.04(p) (noting in statute setting out procedures for appointing counsel that defendant who is determined by court to be indigent is presumed to remain indigent for remainder of proceedings). However, Cruder highlights that despite the indigency determinations, the trial court ordered in its judgment that he pay $355 in court costs. Based on the preceding, Cruder requests that this Court modify

15

the trial court's judgment of conviction to remove the imposition of costs. *See* Tex. R. App. P. 43.2, .3.

As an initial matter, we note that it is not entirely clear that Cruder can present this claim on appeal because he did not object below. *See* Tex. R. App. P. 33.1(a). Although the Court of Criminal Appeals has explained that a defendant can challenge the imposition of court costs for the first time on appeal, that case involved a situation in which the defendant did not have an opportunity to object because the "court costs were not imposed in open court." *Johnson v. State*, 423 S.W.3d 385, 390-91 (Tex. Crim. App. 2014). In this case, the trial court informed the parties during sentencing that it would be imposing the costs at issue, and Cruder had an opportunity to object.

Even if Cruder can present this claim for the first time on appeal, we would not sustain his second issue on appeal. We review a trial court's directive requiring the payment of costs for an abuse of discretion. *See Sloan v. State*, 676 S.W.3d 240, 241 (Tex. App.—Tyler 2023, no pet). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *Mechler*, 153 S.W.3d at 439. Moreover, the ruling will be upheld if the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Article 42.15 of the Code of Criminal Procedure governs the imposition of fines and costs and provides, in relevant part, as follows:

If the court determines that the defendant does not have sufficient resources or income to immediately pay all or part of the fine and costs, the court shall determine whether the fine and costs should be:

(1) subject to Subsection (c), required to be paid at some later date or in a specified portion at designated intervals;

(2) discharged by performing community service under, as applicable, Article 43.09(f), 45A.254, 45A.459, or 45A.460;

(3) waived in full or in part under Article 43.091 or 45A.257; or

(4) satisfied through any combination of methods under Subdivisions (1)-(3).

Tex. Code Crim. Proc. art. 42.15(a-1).

At the punishment hearing, the trial court inquired whether Cruder needed time to pay his court costs, and Cruder requested thirty days to pay the costs. The trial court gave Cruder additional time and ordered at the hearing and in its judgment that the fees be paid 110 days from the date of his sentencing. As set out above, under article 42.15, if a trial court determines that a defendant does not have sufficient funds to "immediately pay," the statute allows the court to then order that the costs be paid at a later date. *Id*.

Given that the trial court ordered payment at a later date as authorized by article 42.15, that Cruder did not object at trial to the imposition of costs, and that the trial court gave Cruder significantly more time than he requested in order to pay the costs, we would not conclude that the trial court abused its discretion by ordering Cruder to pay costs. *Cf. Carradine v. State*, No. 03-24-00012-CR, 2024 WL 3731846, at *10 (Tex. App.—Austin Aug. 9, 2024, no pet.) (mem. op., not designated for publication) ("given that the trial court's payment requirement is one of the options available when a defendant does not have the resources to immediately pay, we would be unable to conclude that the trial court abused its discretion in this

17

case"). Our conclusion is further supported by the options available to Cruder at the trial court should he wish to further challenge the imposition of costs. Under article 43.035, a defendant may ask a trial court to reconsider the imposition of fines and costs if he "has difficulty paying the fine and costs in compliance with the judgment," and the court is required to "hold a hearing to determine whether that portion of the judgment imposes an undue hardship" and "retains jurisdiction for the purpose of" considering and ruling on that request. Tex. Code Crim. Proc. art. 43.035.

For these reasons, we conclude that the trial court did not abuse its discretion by ordering Cruder to pay court costs in this case and, therefore, overrule his second issue on appeal.

## CONCLUSION

Having overruled both of Cruder's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed: June 5, 2025

Do Not Publish

18